**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 42823-2015**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **Boise, June 2015 Term** |
| Plaintiff/Appellant/Cross-Respondent, | ) | |
| | ) | **2015 Opinion No. 79** |
| v. | ) | |
| | ) | **Filed: August 20, 2015** |
| BRYANN KRISTINE LEMMONS, | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| Defendant/Respondent/Cross-Appellant. | ) | |
| | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, in and for Twin Falls County. Hon. Randy J. Stoker, District Judge.

The orders of the district court are <u>reversed</u>.

Kenneth K. Jorgensen, Deputy Attorney General, Boise, argued for appellant/cross-respondent.

Daniel S. Brown, Fuller Law Offices, Twin Falls, argued for respondent/cross-appellant.

_____

EISMANN, Justice.

This is an appeal out of Twin Falls County from an order by the district court granting a new trial on charges of trafficking in methamphetamine on the ground that the State failed to offer evidence showing that one ounce equals twenty-eight grams or more. We reverse and remand for sentencing.

**I.**
**Factual Background.**

Bryann Kristine Lemmons (Defendant) was found guilty by a jury of two counts of trafficking in methamphetamine by delivering methamphetamine and two counts of trafficking in methamphetamine by conspiring to deliver methamphetamine. The charges arose from two instances in which Defendant, with the assistance of a co-conspirator, agreed to, and then did,

deliver methamphetamine to a confidential informant. The first delivery occurred on October 25, 2011, and the second delivery occurred on December 6, 2011.

The maximum penalty for delivery of, or conspiracy to deliver, methamphetamine is life in the custody of the Idaho Board of Correction and a fine of up to $25,000. If the actual weight of the drug, or the weight as represented by the person selling or delivering it, is 28 grams or more, then the crime becomes trafficking. Then, the penalty becomes a minimum of three years and up to life in the custody of the Idaho Board of Correction and a maximum fine of $100,000.

In each instance in this case, the actual weight of the methamphetamine delivered was less than 28 grams. However, the confidential informant testified that in each transaction Defendant represented that she was delivering an ounce of methamphetamine. In addition, the confidential informant testified that Defendant, through the co-conspirator, had agreed to sell one and one-half ounces of methamphetamine, but when the transaction occurred he was told that Defendant could only obtain one ounce and would provide the half ounce later.

During the trial, the detective in charge of the investigation was asked how many grams were in an ounce, and he answered, "Approximately 28." There was no other testimony regarding the conversion of one ounce to grams. Before the State rested, it asked the district court to take judicial notice that one ounce equaled 28.35 grams, but the court refused to do so because at that time it did not know whether that was correct.

With respect to each of the two charges of trafficking in methamphetamine by delivery, the jury was asked whether Defendant was not guilty or guilty of delivering methamphetamine and, if guilty, "Did the person who sold or delivered the methamphetamine represent that it weighed 28 grams or more?" As to each of those charges, the jury answered, "Yes."

Before Defendant was sentenced, she moved for a judgment of acquittal on the counts relating to trafficking on the ground that there was insufficient evidence admitted during the trial to show that one ounce equaled 28 grams or more. After briefing and argument, the district court granted a new trial with respect to the jury questions of whether the person who sold or delivered the methamphetamine represented that it weighed 28 grams or more and with respect to the two charges of trafficking by conspiracy to deliver methamphetamine. The State then filed a notice of appeal.

The following day, Defendant filed a motion for reconsideration, asking for judgments of acquittal rather than a new trial. After briefing and argument, the district court granted

2

judgments of acquittal as to the charges of trafficking by conspiring to deliver methamphetamine and as to the issue of whether the person who sold or delivered the methamphetamine had represented that it weighed 28 grams or more. Defendant then filed a notice of cross-appeal.

The appeal was first heard by the Idaho Court of Appeals. It held that the district court erred in failing to initially grant a judgment of acquittal rather than a new trial on the trafficking charges and that it did not err in refusing to grant a new trial regarding delivery of a controlled substance. The State filed a petition for review, which this Court granted. In cases that come before this Court on a petition for review of a decision of the Court of Appeals, we directly review the decision of the lower court as if the appeal initially came directly to this Court. *State v. Suriner*, 154 Idaho 81, 83, 294 P.3d 1093, 1095 (2013).

## II.
### The District Court's Order Granting Defendant's Motion for Reconsideration Is Void.

On May 30, 2013, the jury returned its verdict in this case finding that Defendant was guilty of all charges. On June 13, 2013, Defendant filed a motion for a judgment of acquittal regarding the trafficking charges because "the State of Idaho failed to introduce evidence or testimony as to the conversion of an ounce into grams." That motion was heard on July 15, 2013. The court stated that "we all know that 28.35 grams is an ounce," but "the likelihood of 12 persons on this jury knowing that an ounce is 28.35 grams is virtually impossible." Based upon that assumption, the district court on July 15, 2013, entered an order denying the motion for a judgment of acquittal and granting a motion for a new trial with respect to the jury questions of whether the person who sold or delivered the methamphetamine represented that it weighed 28 grams or more and with respect to the two charges of trafficking by conspiracy to deliver methamphetamine. On July 24, 2013, the State filed a notice of appeal, and the following day Defendant filed a motion for reconsideration asking the court to grant an acquittal rather than a new trial. That motion was heard on August 23, 2013, and on August 26, 2013, the district court entered an order granting the motion. That order is void because the district court did not have jurisdiction to enter the order.

Idaho Appellate Rule 11(c)(8) provides that an appeal as a matter of right may be taken from "[a]n order granting or denying a motion for new trial." Upon the filing of the notice of appeal, the district court "lost jurisdiction over the entire action except as provided in Rule 13 of

3

the Idaho Appellate Rules." *Bagley v. Thomason*, 149 Idaho 799, 804, 241 P.3d 972, 977 (2010). It had no jurisdiction to take any action in the case except as provided in Rule 13. That rule does not permit a court to grant a motion for reconsideration or a motion for acquittal.

During oral argument on appeal, Defendant contended that subsection (10) of Rule 13 would have permitted the district court's action. That rule permitted the court to "[e]nter any other order after judgment affecting the substantial rights of the defendant as authorized by law." It obviously did not authorize the court's action in this case. By its terms, it would only apply to an order entered after judgment, and no judgment had been entered in this case.

### III.
### Did the District Court Err in Granting a New Trial?

In order for Defendant to be guilty of trafficking under the facts of this case, the State was required to prove that she represented that the weight of the methamphetamine was "twenty-eight (28) grams or more." I.C. §§ 37-2732B(a)(4)(A), 37-2732(a)(4)(D). The undisputed testimony was that Defendant orally represented that the weight of methamphetamine sold each time was one ounce. She made that representation directly to the confidential informant during the first purchase of methamphetamine, and she made that representation in the presence of the confidential informant during the second purchase.

Prior to resting, the State asked the district court to take judicial notice that one ounce equals 28.35 grams. The district court refused because at that time it did not know the conversion rate. The district court was correct in refusing to take judicial notice, but for a different reason. Judicial notice only applies to adjudicative facts. I.R.E. 201(a). The conversion rate of ounces to grams is not an adjudicative fact.

An adjudicatory fact is: "A controlling or operative fact, rather than a background fact; a fact that concerns the parties to a judicial or administrative proceeding and that helps the court or agency determine how the law applies to those parties. For example, adjudicative facts include those that the jury weighs." *Black's Law Dictionary* 610 (Bryan A. Garner ed., 7th ed., West 1999). The conversion rate was not an issue for the jury to decide. It is a matter established by law. The conversion rate is no more an adjudicatory fact than are the provisions of a statute.

Article I, sec. 8, of the Constitution of the United States grants congress the power to "fix the Standard of Weights and Measures." In 1866, Congress first established the equivalence

4

between metric weights and avoirdupois weights. An Act to Authorize the Use of the Metric System of Weights and Measures, ch. 151, 14 Stat. 339 (1866). In 1901, Congress created the National Bureau of Standards, which is now the National Institute of Standards and Technology. 15 U.S.C. § 272(a). It has the responsibility "to develop, maintain, and retain custody of the national standards of measurement." 15 U.S.C. § 272(b)(2). The Institute has established that one ounce equals 28.35 grams. www.nist.gov/pml/wmd/metric/common-conversion-b.cfm (accessed June 5, 2015). In order to avoid the risk that the jury may not know the conversion rate, the State certainly had the right to inform them of it either through evidence or by a jury instruction. However, in this case, the State only offered testimony that one ounce was approximately twenty-eight grams, and it did not offer a jury instruction stating the conversion rate.

The district court assumed that because it did not know the conversion rate, the jurors would not know it either. That is an unwarranted assumption. When asked on the jury verdict, "Did the person who sold or delivered the methamphetamine represent that it weighed 28 grams or more?," the jury answered, "Yes." The court had instructed the jury, "If, after considering all of the instructions in their entirety, and after having fully discussed the evidence before you, the jury determines that it is necessary to communicate with me, you may send a note by the bailiff." The jury did not send a note to the court asking the conversion rate from ounces to grams.

Even the court's instructions inferred that one ounce was 28 grams or more. Instruction No. 13C instructed the jury that it would be asked to determine "whether the person who sold or delivered Methamphetamine represented that the amount was 28 grams or greater." With respect to Count One, the only evidence as to any representation regarding the weight of the drug was that it was represented to be one ounce. On the Verdict Form with respect to Count One, the jury was first asked whether Defendant was not guilty or guilty "of Delivering Methamphetamine on or about October 25, 2011," and it determined that she was guilty. The jury was then instructed that if it found Defendant guilty, it must answer Part 2, which asked, "Did the person who sold or delivered the methamphetamine represent that it weighed 28 grams or more?" Where the only evidence was that the person represented that one ounce would be sold, there would have been no reason to ask the jury Part 2 if one ounce was not 28 grams or more.

Instruction 13D set forth what the State must prove for Defendant to be guilty of Count Three, Conspiracy. The instruction informed the jury that the State must prove Defendant and

5

another agreed "to commit the crime of Trafficking in Methamphetamine" and that one of the parties to the agreement performed at least one of the specified overt acts. The only overt act related to the weight of the drug was: "Idaho State Police Confidential Informant 86 arranged by telephone to purchase one (1) ounce of methamphetamine through Sara Beth Haffner [the co-conspirator]." The jury was then instructed that to find Defendant guilty of agreeing "to commit the crime of Trafficking in Methamphetamine," the State must prove that "the person delivering and/or selling the methamphetamine represented its weight as twenty-eight grams or more." Thus, the court instructed the jury that the person delivering or selling the drug had to have represented "its weight as twenty-eight grams or more" and that the State must prove at least one of the overt acts. The only overt act listed that dealt with weight was the representation that the confidential informant arranged to purchase "one (1) ounce of methamphetamine." If one ounce was not 28 grams or more, there would be no reason to instruct the jury as to this crime.

Although the State was required to prove that the represented weight of the methamphetamine was 28 grams or more, there is no requirement that the represented weight be expressed in the wording of the statute, i.e., in grams. What is necessary is that the State prove that the weight represented, regardless of how it is measured, was the same as 28 grams or more. As a matter of law, one ounce is more than 28 grams. Therefore, testimony that Defendant represented that the weight was one ounce is, as a matter of law, testimony that the Defendant represented that the weight of the methamphetamine was more than 28 grams.

A witness need not testify in the wording of a criminal statute in order to prove a violation of that statute as long as the witness's testimony shows a violation of the statute. It is the substance of the testimony, not the particular words used, that is material. For example, robbery is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." I.C. § 18-6501. A victim testifying about being robbed could describe circumstances that constitute a robbery without using any of the words in the statute. Assume that a victim testified that while walking down a sidewalk two men he did not know grabbed him; that he struggled; that one of the men got him into a headlock and began choking him; that the other man took a wallet from the victim's pocket which contained $153; that after taking the wallet, the man slugged the victim in the face, making him woozy; and that the two men then ran away. That

6

testimony would be sufficient to prove that a robbery had occurred, even though the victim did not use any of the words in the statute.

Because there was sufficient evidence to support the verdict, we reverse the district court's order for a new trial.

Defendant argues that the order granting a new trial constituted an acquittal because it was based upon the insufficiency of the evidence and that she therefore cannot be tried again. She is correct that a new trial cannot be granted on the ground that the evidence was insufficient to prove the offense of which the defendant was found guilty. *Burks v. United States*, 437 U.S 1, 18 (1978). A purported grant of a new trial for that reason is, in legal effect, an acquittal. *Id*. However, the Double Jeopardy Clause "protects against successive prosecutions for the same offense after acquittal or conviction." *Monge v. California*, 524 U.S. 721, 727-28 (1998). The district court's order granting a new trial came after the jury verdict, not before. Because we hold that there was sufficient evidence and reverse the order granting a new trial, there will not be a subsequent prosecution and therefore no violation of the Double Jeopardy Clause.

## IV.
### Did the District Court Err in Failing to Give Defendant's Requested Instruction Regarding Informants?

The confidential informant in this case was being paid for his services. Defendant requested a jury instruction regarding informants, which was as follows:

> You have heard testimony that _____, a witness, has received compensation from the government in connection with this case. You should examine _____'s testimony with greater caution than that of ordinary witnesses. In evaluating that testimony, you should consider the extent to which it may have been influenced by the receipt of compensation from the government.

"Whether the trial court properly instructed the jury presents a question of law over which this Court exercises free review." *State v. Poe*, 139 Idaho 885, 905, 88 P.3d 704, 724 (2004). "[T]he trial court does not err in refusing a proposed instruction where it is either erroneous in its statement of the law, is not supported by the evidence, constitutes an impermissible comment on the evidence, or is adequately covered by other instructions given by the court." *State v. Tiffany*, 139 Idaho 909, 916, 88 P.3d 728, 735 (2004).

The district court gave the following jury instruction:

7

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1. the opportunity and ability of the witness to see or hear or know the things testified to;
2. the witness's memory;
3. the witness's manner while testifying;
4. the witness's interest in the outcome of the case and any bias or prejudice;
5. whether other evidence contradicted the witness's testimony;
6. the reasonableness of the witness's testimony in light of all the evidence; and
7. any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.

In this case, the confidential informant volunteered. He did not work as a confidential informant in exchange for charges being dismissed, reduced, or not filed. However, he was paid. During each drug deal, he wore a wireless transmitter to permit the detective to record what was said. He was also searched before and after each transaction and was under surveillance. Defendant cross-examined the informant to probe his credibility, and there is no contention that the cross-examination was restricted. Defendant did not testify, nor did the co-conspirator.

Defendant asserts that her right to due process was violated by the court's refusal to give the requested jury instruction, but she cites no authority so holding. The instruction given by the district court adequately covered the issue of judging credibility.

## V.
### Is Defendant Entitled to a New Trial Based Upon Prosecutorial Misconduct?

During the detective's testimony, the prosecutor asked, "And how many grams are in an ounce?" The detective answered, "Approximately 28." During his closing argument, the prosecutor stated, "You also heard the testimony of [the detective] who said that an ounce is more than 28 grams." Defendant did not object to that statement.

During defense counsel's closing argument, he disputed the prosecutor's statement, telling the jury:

Mr. Hatch [prosecutor] in his opening statement says that [the detective] declared under oath that an ounce is more than 28 grams? Where did that come from, ladies and gentlemen? That is not my recollection of [the detective's] testimony. As I recall it, and I have little doubt as to my recollection, but take it

8

for what you will, he said it's approximately 28 grams. He didn't say more than the 28 grams. The only evidence before you as to what an ounce actually is is approximately 28 grams. Approximately, not more than. I urge you to rely upon your own recollection of his testimony, but that's certainly mine.

Prior to the closing arguments, the district court instructed the jury that the closing arguments are not evidence and that they should rely upon their own memories as to the facts. The court stated:

> Certain things you have heard or seen are not evidence, including arguments and statements by lawyers. The lawyers are not witnesses. What they say in their opening statements, closing arguments, and at other times is included to help you interpret the evidence but is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, follow your memory.

"[W]here an error has occurred at trial and was not followed by a contemporaneous objection, such error shall only be reviewed where the defendant demonstrates to an appellate court that one of his unwaived constitutional rights was plainly violated." *State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010). "Whether comments during closing arguments rise to the level of fundamental error is a question that must be analyzed in the context of the trial as a whole." *State v. Carson*, 151 Idaho 713, 718, 264 P.3d 54, 59 (2011). "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Even though the prosecutor misstated the detective's testimony, Defendant has failed to show that her substantial rights were affected—that there is a reasonable possibility that the error affected the outcome of the trial. *Perry*, 150 Idaho at 226, 245 P.3d at 978.

## VI.
## Conclusion.

We reverse the order of the district court granting Defendant a new trial on the questions of whether the person who sold or delivered the methamphetamine represented that it weighed 28 grams or more and on the charges of trafficking by conspiring to deliver methamphetamine. We remand this case to the district court for sentencing on all four trafficking charges.

Chief Justice J. JONES, Justices BURDICK and HORTON **CONCUR.**

9

W. Jones, J. specially concurring:

While I concur with the majority that the district court's order granting Defendant a new trial must be reversed, I believe this case can be resolved more easily by taking judicial notice of the conversion rate of ounces to grams. Under Rule 201 of the Idaho Rules of Evidence, a court can take judicial notice at any point throughout a legal proceeding. Thus this Court can take judicial notice now, and can thereby confirm the original judgment that Defendant was guilty of trafficking methamphetamine without need to remand except for the entry of a conviction.

In order to convict Defendant of trafficking methamphetamine, the State was required to prove that Defendant sold or offered to sell methamphetamine in an amount equal to or greater than twenty-eight grams. *See* I.C. §§ 37-2732B(a)(4)(A), 37-2732(a)(4)(D). To this end, the State provided testimony from a police informant that Defendant offered to sell him one ounce of methamphetamine. When asked how many grams were in an ounce the informant testified that there were "approximately twenty eight." The state prosecutor soon realized his problem—he had proven that Defendant had offered to sell one ounce of methamphetamine, while the statute refers only to grams. In an attempt to correct the situation he requested that the court take judicial notice that an ounce is more than twenty-eight grams. The judge denied this request, noting that he personally did not know the conversion of ounces to grams and, further, that he did not believe that any of the jurors would know either.

There are two statutory provisions in Idaho establishing judicial notice. One is Rule 201 of the Idaho Rules of Evidence. The other is Chapter 1 of Title 9 of the Idaho Code.

Rule 201 of the Idaho Rules of Evidence provides in part for judicial notice of "adjudicative facts" that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." I.R.E. 201(b). Black's Law Dictionary defines an adjudicative fact as "a controlling or operative fact, rather than a background fact; a fact that concerns the parties to a judicial or administrative proceeding and that helps the court or agency determine how the law applies to those parties. For example, adjudicative facts include those that the jury weighs." BLACK'S LAW DICTIONARY 610 (7th ed. 1999).

That an ounce is equal to 28.35 grams is clearly a fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." I.R.E. 201(b). The conversion rate of ounces to grams has been set at one ounce per 28.35 grams

by the National Institute of Standards and Technology, as established by Congress. 15 U.S.C. § 272(a).

The conversion rate is also an "adjudicative fact." As noted above, the State had to prove that Defendant sold or offered to sell at least twenty-eight grams of methamphetamine. If Defendant had offered to sell under twenty-eight grams of methamphetamine she could not have been found guilty of trafficking under Idaho law. The conversion rate of ounces to grams was therefore a "controlling" fact that the jury would need to "weigh."[1]

The majority contends that the conversion rate is "no more an adjudicative fact than are the provisions of a statute" because "the conversion rate is not an issue for the jury to *decide*." *Supra* __(emphasis added). However, there is a marked difference between a fact that a jury would "weigh" and a fact a jury would "decide." I fully agree with the majority that the conversion rate is an established fact and it would not make sense to say that the jury would "decide" it. However, this does not mean that the conversion rate is not a fact the jury would need to consider and weigh in determining whether testimony that Defendant had offered to sell an ounce of methamphetamine was sufficient to convict her of trafficking.

Further, even ignoring the Idaho Code provisions cited above, this very Court has established on multiple occasions that the "provisions of a statute" can be the proper purview of judicial notice. In *White v. White* for example, this Court determined that it is proper for courts to take judicial notice of the language of statutes in sister states. 94 Idaho 26, 30, 480 P.2d 872, 876 (1971). Likewise, in *Lewiston v. Frary* this Court held that judicial notice of municipal ordinances can be proper. 91 Idaho 322, 328, 420 P.2d 805, 808 (1966). The majority's conclusion that conversion rates of weights and measures are no more an adjudicative fact than are the provisions of a statute is therefore inapt.

Chapter 1 of Title 9 of the Idaho Code likewise provides that the conversion rate is the proper subject of judicial notice. It states that courts can take judicial notice of: (1) "[t]he true signification of all English words and phrases"; (2) "[w]hatever is established by law"; and (3)

---

[1] *See* BLACK'S LAW DICTIONARY 610 (7th ed. 1999).

"[t]he laws of nature, the measure of time, and the geographical divisions and political history of the world." I.C. § 9-101.[2]

The majority asserts, and I agree, that the conversion rate of grams to ounces is "a matter established by law." *Supra __*. The conversion rate of ounces to grams has been set at one ounce per 28.35 grams by the National Institute of Standards and Technology. Accordingly, the "true signification" of the English word "ounce" is a measure of weight equal to 28.35 grams. One need only look to the nearest dictionary to confirm this is the case. *See, e.g.*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, 1420 (11th ed., 2003).

Further, while weights and measures may not themselves qualify as "laws of nature," which are physical laws,[3] they are certainly analogous. The legal construct of judicial notice is intended to preserve judicial efficiency by recognizing facts that are easily and objectively verifiable. It does not serve the interests of justice or efficiency to require a party to provide evidence that an ounce is equal to 28.350 grams any more than it would to require a party to provide evidence of the existence of gravity or any other universally recognized scientific fact.

Accordingly, the conversion rate of grams to ounces fits into the enumerated categories for judicial notice set forth in the Idaho Code, however, the majority still argues that conversion rates are not the proper subject of judicial notice under the Idaho Rules of Evidence because they are not "adjudicative." I respectfully disagree.

For the reasons provided herein, I disagree with the majority's conclusion that the district court was correct in its refusal to take judicial notice. In my opinion, the district court erred and this Court should take such judicial notice at the present time and affirm Defendant's conviction for trafficking methamphetamine.

HORTON, J., specially concurring.

I write in response to Justice Warren Jones' idiosyncratic analysis of the issue presented in this case. His views are contrary to those of the committee that submitted Rule 201 to this

---

[2]    In the event of conflict between the Idaho Code and the Idaho Rules of Evidence, the Idaho Rules of Evidence control on issues concerning the admissibility of evidence. I.R.E. 1102. However, I see no conflict between the respective judicial notice provisions.

[3]    *See* BLACK'S LAW DICTIONARY 610 (10th ed. 1999).

Court for adoption. Further, if his premise is correct, he should be dissenting, rather than concurring in the decision of this Court.[4]

Justice Jones correctly recognizes that the conversion rate of the avoirdupois ounce to grams is established by law. He then incorrectly characterizes the conversion rate as an "adjudicative fact." "Adjudicative facts" are "those facts necessary to resolve issues that relate only to the particular case." M. Clark, Report of the Idaho State Bar Evidence Committee, C 201, p. 1 (4th Supp. 1985). "The rule does not cover judicial notice of law (foreign, sister state, and domestic) which is considered to be a question of law and is governed by I.R.C.P. 44(d) and Idaho Code § 9-101." *Id*.

More significantly, if Justice Jones is correct, Lemmons' conviction should be vacated. As the Committee warned,

> The court should exercise caution before taking judicial notice of facts on post-trial motions or on appeal in criminal proceeding in view of Rule 201(g), which contemplates that a jury in a criminal case should be permitted to determine all the facts in a proceeding. Judicial notice at this stage would recognize a fact as true without a jury determination. More importantly, judicial notice of an adjudicative fact on appeal or otherwise after trial, precluding the jury from determining the fact sought to be noticed, could be viewed as violating the Sixth Amendment right to trial by jury. See, e.g., United States v. Dior, 671 F.2d 351, 358 n.11 (9th Cir. 1982).

M. Clark, Report of the Idaho State Bar Evidence Committee, C 201, p. 3 (4th Supp. 1985). *See also United States v. Jones*, 580 F.2d 219, 224 (6th Cir. 1978) (Congressional rejection of proposed rule that a judicially-noticed fact was conclusively established in criminal was due to concern that the proposed rule "violated the spirit, if not the letter, of the constitutional right to a jury trial."). If Justice Jones' view that the ounce to grams conversion is an adjudicative fact is correct, the appropriate remedy would be to vacate Lemmons' conviction. The interest in

---

[4] Although Justice Jones correctly observes that the conversion rate has been established by the National Institute of Standards and Technology, he incorrectly states that "an ounce is equal to 28.350 grams." The National Institute of Standards and Technology's website characterizes the 28.35 gram to one-ounce ratio as an "approximate conversion." http://www.nist.gov/pml/wmd/metric/common-conversion-b.cfm (last accessed August 18, 2015). Indeed, that website's more precise statement of the ratio (28.34952 grams per avoirdupois ounce) is itself merely an approximation. http://physics.nist.gov/Pubs/SP811/appenB9.html (last accessed August 18, 2015).

"judicial efficiency," which Justice Jones finds to be so important, does not give this Court license to usurp the jury's role by making factual finding on appeal.