# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49240

| | | |
|---|---|---|
| SHAUN BASS and LAREE BASS, Husband and Wife, | ) | |
| | ) | |
| Plaintiffs-Counterdefendants-Respondents, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD ESSLINGER and JENNIFER ESSLINGER, Husband and Wife, | ) | Boise, January 2023 Term |
| | ) | |
| | ) | Opinion Filed: March 2, 2023 |
| | ) | |
| Defendants-Counterclaimants-Appellants, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| and | ) | |
| | ) | |
| DOES I-X, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District of the State of Idaho, Idaho County. Gregory FitzMaurice, District Judge.

The decisions of the district court are affirmed.

Law Office of Westley Hoyt, Clearwater, for Appellants. Wesley Hoyt argued.

Creason, Moore, Dokken & Geidl, PLLC, Lewiston, for Respondents. Samuel T. Creason argued.

---

BRODY, Justice.

This appeal involves a dispute over ownership of one-third of an acre of land between two parcels near Slate Creek, Idaho. The disputed one-third acre is located south of a fence erected in the 1970s by the family of the current owners of the southern parcel, the Basses, and the predecessors-in-interest to the northern parcel's current owners, the Esslingers.

1

The district court granted summary judgment for the Basses, declined to take judicial notice of a case file from a 2006 quiet title action concerning the northern parcel, found that a boundary by agreement existed at the historic fence line, denied a motion to continue the summary judgment hearing pending criminal trespass charges against the Esslingers, and granted the Basses $107,134.32 in treble damages. Today, we affirm the decisions of the district court. We also award attorney's fees to the Basses for part of the appeal under Idaho Code section 12-121.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Outside Slate Creek, Idaho, Shawn and Laree Bass own a five-acre parcel of land off highway 95. To the north of the Bass's land, Donald and Jennifer Esslinger own three parcels of land. The southern boundary of one of those parcels is the northern boundary of the Bass land. Along this boundary line, there is one-third of an acre that both the Basses and the Esslingers contend they own. The Basses claim that the land is theirs because of a fence that existed on the northern side of the disputed land, while the Esslingers claim that the fence is not the correct boundary and that they own the property just to the south of the fence.



*Map of the disputed area between the Bass and Esslinger parcels.*

The Bass family has owned the southern parcel since at least the 1940s. The fence that they believe marks the boundary line between their property and the Esslingers' property was most recently built in the 1970s by the Bass family and the prior owners of the Esslinger parcel, the Mareks. When the fence was built, it was agreed by the owners of both parcels that it was the boundary between the two parcels.

2

The Esslingers purchased the northern parcel in 2019. In preparing to sell the property in late 2020, the Esslingers hired a surveyor to mark the exact boundaries between the two properties. The surveyor determined that the actual boundary between the two properties was just south of the fence and included the one-third acre now in dispute.

On the day of the survey, the Basses and the Esslingers were both present. The Esslingers contend the Basses understood where the actual boundary was located, while the Basses maintain that they understood the fence line to be the correct division between the two properties. The Esslingers subsequently took down the fence, cut down trees, removed underbrush, and mowed the area. Despite the Basses' objections, the Esslingers continued to remove trees and vegetation from the disputed land over the next month.

## A. History of the Esslinger Parcel

The Large family owned the northern parcel, along with two other nearby parcels, until 1976. The Marek family purchased the land at that time and owned it until 2007. When the Mareks purchased the land from the Larges, the families entered into a financial agreement, (the "Escrow Agreement,") that provided that after the down payment, the Mareks would make yearly payments to the Larges until the total purchase price had been paid. In that agreement, the Mareks agreed to "keep the property in the same condition that it then was."

The purchase price was paid off and a warranty deed in favor of the Mareks was recorded in 1999. The three parcels remained in the Mareks' possession without issue until 2005, when it was discovered that title to the parcels was incomplete because the warranty deed previously recorded lacked a legal description for the northern parcel. The Mareks filed suit to quiet title to the northern parcel in their names. Because the elder Larges who had sold the Mareks the property had since passed away and the location of the Larges' heirs was unknown, the Mareks filed a motion asking for permission to publish notice of the quiet title action in the local newspaper as authorized by Idaho Code section 5-508. The notice was published in the *Idaho County Free Press* for a month and provided notice to the Larges and "their creditors (known or unknown), unknown heirs, devisees, or legatees, their successors in interest," or "any other parties who might claim in interest in or to the" disputed property.

Without response from any adverse parties, the Mareks successfully quieted title to the northern parcel in their names. The Basses did not participate and were not named as parties in the quiet title action ("the Quiet Title Litigation").

## B. Procedural History

After the Esslingers entered the northern parcel, took down the fence, and removed the trees, the Basses filed their initial complaint, requesting a restraining order to prevent further damage, asking for injunctive relief to quiet title to the disputed property based on boundary by agreement, and alleging trespass and timber trespass against the Esslingers. With their answer, the Esslingers filed counterclaims alleging criminal racketeering, unjust enrichment, and breach of contract, among others. Around the same time, the Esslingers learned that criminal trespass charges were also being brought against them based on the same facts pled in the Basses' civil complaint. These charges included the possibility of jailtime for both Esslingers.

Following the initial filings and an agreement not to make use of the property until the case was resolved, the parties scheduled depositions of the Esslingers in Grangeville, Idaho. The parties traveled to Grangeville in April 2021, to complete the Esslingers' depositions. About half an hour into the first deposition, Jennifer Esslinger invoked her Fifth Amendment right against self-incrimination under the United States Constitution and stopped answering questions. Don Esslinger's deposition was over in minutes because he also invoked his Fifth Amendment right. Based on the pending criminal charges, the Esslingers later explained, they were unable to answer any questions during the depositions because they were concerned that they would be offering testimony that would be misconstrued against them as direct or circumstantial evidence of criminal conduct that had not occurred.

After the depositions, the Basses filed a motion for summary judgment against the Esslingers and a motion for sanctions against the Esslingers' attorney, alleging that the "objections and refusals to answer went far beyond particular aspects regarding the transcripts." The Esslingers also filed a motion for summary judgment and a hearing was set for late June 2021.

Two days before the hearing and nearly two months after the depositions, around 10:00 p.m., the Esslingers filed a motion to continue the hearing because, based on the pending criminal trespass charges, "Defendants [had] exercised their Fifth Amendment right to remain silent and by remaining silent, they [would be] deprived of the opportunity to testify and rebut the false allegations against them raised in Plaintiff's Motion for Summary Judgment." They also filed a motion for judicial notice, asking the district court to "take judicial notice of all documents including but not limited to the pleadings, notices, judgment, Order and Decree" from the earlier Quiet Title Litigation. The district court, citing both timeliness issues and substantive problems

4

with the Esslingers' motions, denied the motions and granted summary judgment for the Basses on the boundary by agreement claim. The Esslingers filed a motion for reconsideration, which was also denied, and this appeal followed.

## II.    ANALYSIS

### A. The district court did not err in denying the Esslingers' motion to continue the summary judgment hearing.

The Esslingers challenge the district court's denial of their motion to continue the summary judgment hearing, contending that the invocation of their Fifth Amendment rights precluded them from submitting material evidence in opposition to the Basses' motion for summary judgment. The district court denied the motion because it was untimely and also because the Esslingers had failed to provide legal authority supporting their position.

"The decision to grant or deny a motion for continuance is within the discretion of the judge." *State v. Payne,* 146 Idaho 548, 567, 199 P.3d 123, 142 (2008). The criminal charges were initiated in November of 2020, and the Esslingers did not file their motion until two days before the summary judgment hearing in June 2021. Idaho Rule of Civil Procedure 7(b)(3)(A) requires motions to be filed at least fourteen days prior to the hearing. The district court's decision to deny a continuance on timeliness grounds was consistent with the time standards set forth in Rule 7. As such, the Esslingers have failed to demonstrate an abuse of discretion.

### B. The district court did not err when it declined to take judicial notice of the entire file from the Quiet Title Litigation.

The Esslingers requested that the district court take judicial notice of "all documents including but not limited to the pleadings, notices, judgment, Order and Decree" from the Quiet Title Litigation. The district court denied that request, finding that "the Esslingers did not identify specific items in the [Quiet Title Litigation file] they were requesting the court take judicial notice of." Moreover, the district court pointed out that the timeliness of the motion for judicial notice was an issue; it was filed two days before the hearing, while Idaho Rule of Civil Procedure 7(b)(3)(a) states that a motion must have been filed two weeks prior. We hold that even if timeliness was not an issue, the Esslingers have not provided the necessary information required for the court to take judicial notice of the Quiet Title Litigation.

Whether a district court erred in taking or not taking judicial notice is an evidentiary question we review under the abuse of discretion standard. *Rome v. State*, 164 Idaho 407, 413, 431 P.3d 242, 248 (2018); see also *Bolognese v. Forte*, 153 Idaho 857, 863–64, 292 P.3d 248, 254–55

5

(2012) (asking whether the district court abused its discretion by failing to take judicial notice of ordinances and administrative rules but not specifying the particular judicial notice rule at issue). Idaho Rule of Evidence 201 provides the general rule for judicial notice of "adjudicative facts." An "adjudicative fact" is a "[a] controlling or operative fact, rather than a background fact; a fact that concerns the parties to a judicial or administrative proceeding and that helps the court or agency determine how the law applies to those parties. *State v. Lemmons*, 158 Idaho 971, 974, 354 P.3d 1186, 1189 (2015) (internal quotation marks omitted) (quoting *Black's Law Dictionary* 610 (7th ed. 1999)). Idaho Rule of Evidence 201(c) provides:

> The court:
>
> (1) may take judicial notice on its own; or
>
> (2) must take judicial notice if a party requests it and the court is supplied with the necessary information.
>
> When a court takes judicial notice of records, exhibits, or transcripts from the court file in the same or a separate case, the court must identify the specific documents or items so noticed. When a party requests judicial notice of records, exhibits, or transcripts from the court file in the same or a separate case, the party must identify the specific items for which judicial notice is requested or offer to the court and serve on all parties copies of those items.

I.R.E. 201(c).

While we have not previously examined the standard for taking judicial notice of an entire case file in the civil context outside of post-conviction proceedings, our precedent shows that a party must be specific in their requests for notice because "judicial notice is intended to preserve judicial efficiency by recognizing facts that are easily and objectively verifiable." *State v. Lemmons*, 158 Idaho 971, 979, 354 P.3d 1186, 1194 (2015); *Rome v. State*, 164 Idaho 407, 416, 431 P.3d 242, 251 (2018).

In *Rome v. State*, a jury had convicted the defendant of aiding and abetting a burglary. 164 Idaho at 410. The defendant requested judicial notice of seven items, including "The Clerk's Record on Appeal" from his direct appeal, the court's complete file from his underlying criminal case, and the "court file" in another criminal case. *Id.* at 414. None of his requests asserted that they pertained to adjudicative facts, and most of them failed to specify what the district court was supposed to take notice of. *Id.* at 415. This Court considered what standard to use in reviewing the district court's decision and whether the defendant met the specificity requirements in his requests. *Id.* In considering the specificity requirements, we explained that "[p]roviding the 'necessary

6

information' means supplying the court with a specific reference to the adjudicative fact or facts contained in the designated record, exhibit, or transcript that is relevant to the cause of action or specific claim before the court." *Id.* at 414.

In this case, the Esslingers have failed to specify what adjudicative facts would have been relevant to the cause of action. They highlighted that the case file they requested notice of was "very small," and that "literally, every one of the six (6) pleadings in this file is relevant to the Esslingers' case and should have been available for them to use and argue in the defense against summary judgment." The district court, in making its decision, considered the decree from the Quiet Title Litigation, along with Peggy Marek's explanation of the case in her declaration. The Esslingers do not explain what, if any, additional substance the district court would have gleaned had it considered the rest of the record. Instead, they maintained that Peggy Marek's assertion that she owned the disputed land, the caption and paragraphs naming the parties involved in the Quiet Title Litigation that do not include the Basses, and the other documents are "of relevance," but do not explain why.

Similar to *Rome v. State*, the specificity burden has not been met here. It is not enough to simply claim that documents are relevant; the party requesting judicial notice must articulate the specific adjudicative facts to be taken notice of and reference to an entire case file is not sufficient. Thus, the district court did not abuse its discretion in concluding that the Esslingers did not properly request judicial notice.

## C. The district court did not err when it granted summary judgment for the Basses.

The district court granted summary judgment in favor of the Basses, holding the historic fence line is the boundary between the two parcels at issue based on the legal doctrine of boundary by agreement. The Esslingers challenge that determination on two grounds. First, they contend the Quiet Title Litigation precludes the Basses from litigating the boundary. And second, they contend the Escrow Agreement between the Esslingers' predecessors-in-interest prohibited the Mareks from agreeing to a boundary at the fence line. The Esslingers' arguments are not well taken.

To put the Esslingers' arguments in context, we have to go back to the history of their parcel. The Mareks purchased the land from the Larges pursuant to the terms of an Escrow Agreement that provided that after the down payment, the Mareks would make yearly payments to the Larges until the total purchase price was paid in full. In that agreement, the Mareks agreed to "keep the property in the same condition that it then was."

7

The purchase price was paid off and the warranty deed in favor of the Mareks was recorded in 1999. The three parcels remained in the Mareks' possession without issue until 2005, when they discovered that title to the parcels was incomplete because the warranty deed previously recorded lacked a legal description for the parcel that is now owned by the Esslingers. The Mareks filed suit to quiet title to the land in their names and published notice to the Larges and "their creditors (known or unknown), unknown heirs, devisees, or legatees, their successors in interest," or "*any other parties who might claim in interest in or to the*" disputed property in the *Idaho County Free Press*. Without response from any adverse parties, the Mareks successfully quieted title to the northern parcel, allegedly including the disputed property, in their names.

The Esslingers contend the Quiet Title Litigation conclusively established the boundary for their parcel and the Basses' parcel, and that the Basses were precluded from raising the doctrine of boundary by agreement. Res judicata, or claim preclusion, "bars not only subsequent relitigation of a claim previously asserted, but also subsequent relitigation of any claims relating to the same cause of action which were actually made or which might have been made." *Hindmarsh v. Mock*, 138 Idaho 92, 94, 57 P.3d 803, 805 (2002). A claim is also precluded if it could have been brought in the previous action, regardless of whether it was actually brought, where: (1) the original action ended in final judgment on the merits, (2) the present claim involves the same parties as the original action, and (3) the present claim arises out of the same transaction or series of transactions as the original action. *Berkshire Invs., LLC v. Taylor*, 153 Idaho 73, 81, 278 P.3d 943, 951 (2012). When the three elements are established, claim preclusion bars "every matter offered and received to sustain or defeat the claim but also as to every matter which might and should have been litigated in the first suit." *Monitor Fin., L.C. v. Wildlife Ridge Ests., LLC*, 164 Idaho 555, 560–61, 433 P.3d 183, 188 (2019), (citing *Magic Valley Radiology, P.A. v. Kolouch*, 123 Idaho 434, 437, 849 P.2d 107, 110 (1993) (quoting *Joyce v. Murphy Land & Irrigation Co.,* 35 Idaho 549, 553, 208 P. 241, 242–43 (1922)). The Esslingers essentially argue that, because the Basses should have been parties to the Quiet Title Litigation, they are now precluded from this litigation. We disagree.

While the Quiet Title Litigation resulted in a final judgment on the merits—which meets the first element of the res judicata doctrine—the Basses were not parties to the Quiet Title Litigation and this appeal does not arise out of the same transaction or series of transactions as the Quiet Title Litigation. Because the second and third elements are not met, res judicata does not apply and the Basses are not barred from bringing this litigation.

The Esslingers argue that, even though the Basses were not parties to the Quiet Title Litigation, they were on notice of the suit because of the service through publication. This is incorrect; for the reasons explained below, the Basses were not on notice of the Quiet Title Litigation and, because they were not designated parties to that case, are not barred from litigating this one.

In general, " 'one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been a made a party by service of process.' " *Carter v. Gateway Parks, LLC*, 168 Idaho 428, 437, 483 P.3d 971, 980 (2020) (quoting *Richards v. Jefferson Cnty., Alabama*, 517 U.S. 793, 798, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996)). Idaho law allows service through publication with permission from the court for parties who are out of state, unknown, or otherwise cannot be found after due diligence:

> resides outside of the state, or has departed from the state, or cannot after due diligence be found within the state, or conceals himself therein to avoid the service of summons, or is a foreign corporation having no managing or business agent, cashier or secretary within this state, or where any persons are made defendant by the style and description of unknown owners, or unknown heirs or unknown devisees of any deceased person and the names of such unknown owners or heirs or devisees are unknown to the complainant in the action.

I.C. § 5-508. Thus, if a party's status is not enumerated in the statute, service through publication, even if proper for some defendants, would not be proper on a party not included in the list.

The service through publication in the Quiet Title Litigation was for Samuel C. Large, Rosalie M. Large Frieburger, James Large, Cleo Large, their creditors (known or unknown), unknown heirs, devisees, or legatees, their successors in interest, or "any other parties who might claim in interest in or to the" disputed property. The Esslingers hinge their arguments on "any other parties who might claim in interest in or to the disputed property," but offer no explanation as to why the Basses were not specifically named or served personally, how they had an interest in the property disputed in that case, or how, under the law, they would be properly included in the service by publication when they are not within the bounds of the statute allowing said service.

Furthermore, the Quiet Title Litigation did not involve the same claim as this appeal. The "same claim" requirement bars both "matters offered and received to defeat the [initial] claim," and "every matter which might and should have been litigated in the first suit." *Ticor Title Co. v. Stanion*, 144 Idaho 119, 126, 157 P.3d 613, 620 (2007). The Quiet Title Litigation was initiated to

9

correct a missing legal description. At no point in that case was there a boundary dispute or a question of where the southern perimeter of the northern parcel was located.

Because the Basses were not parties to the Quiet Title Litigation, were not served through publication, and the Quiet Title Litigation involved a different claim than this appeal, the Esslingers' res judicata argument fails. The Esslingers also contend the terms of the Escrow Agreement between the Larges and the Mareks for the disputed property were breached by the Mareks; thus, Peggy Marek's testimony concerning the ownership of the land was invalid. The Escrow Agreement contained a provision requiring the Mareks to keep the property in the same condition until the terms of the agreement were complete and payment was fulfilled. According to the Esslingers, Peggy Marek's handshake "[gave] away 1/3 of the land" which "amounts to a subdivision of the land and a transfer of real property…which would have been a breach of contract with the Large family, leading to dire consequences for the Mareks."

This argument is also without merit. A breach of contract claim must be between the parties to that claim or their third-party beneficiaries. *Campbell v. Parkway Surgery Ctr., LLC*, 158 Idaho 957, 963, 354 P.3d 1172, 1178 (2015) (citing *Wing v. Martin*, 107 Idaho 267, 272, 688 P.2d 1172, 1177 (1984) ("[I]t is axiomatic in the law of contract that a person not in privity cannot sue on a contract.")). "Privity" refers to "those who exchange the [contractual] promissory words or those to whom the promissory words are directed." *Wing v. Martin*, 107 Idaho 267, 272, 688 P.2d 1172, 1177 (1984).

The Esslingers were not parties to the Escrow Agreement, do not have contractual privity with the parties to that agreement, and are not third-party beneficiaries of that agreement. Any remedy for breach of the agreement between the Larges and the Mareks potentially available for that breach has no bearing on the Esslingers' claim to the land in question in this case. Because the Esslingers' challenges to the district court's grant of summary judgment are without merit, we affirm the district court's decision.

### D. Attorney's fees are awarded to the Basses.

The Basses request attorney's fees pursuant to Idaho Code section 6-202(3)(b)(ii), which authorizes an award in any action brought to enforce a civil trespass claim. We held in *Fischer v. Croston*, 163 Idaho 331, 342, 413 P.3d 731, 742 (2018), that where the primary claim involves land ownership and the incidental claim is civil trespass, attorney's fees must be apportioned to reflect the work done only in connection with the trespass claim. We have a similar situation in

10

this case. Here, the difference is the Esslingers have not challenged the district court's rulings on the trespass claim except to the extent those rulings reflect an erroneous ownership decision. Said differently, the work done on this case relates to the ownership dispute, not the trespass claim. As such, attorney's fees are denied under the civil trespass statute.

The Basses also request a partial award of attorney's fees under Idaho Code section 12-121. Idaho Code section 12-121 allows fees for claims brought "frivolously, unreasonably or without foundation." I.C. § 12-121. The Basses contend that the Esslingers presented their claims regarding the motion for judicial notice and motion for continuance without properly researching and responding to the district court's decisions. We agree.

The Esslingers' challenges to the district court's denial of their motion to continue the summary judgment hearing and motion to take judicial notice of the entire record from the Quiet Title Litigation were without legal or factual foundation. As explained above, the motions were clearly untimely under the Idaho Rules of Civil Procedure and no motions to shorten time were made. In addition, on appeal, the Esslingers failed to provide any legal analysis of how the district court abused its discretion in denying these motions. Accordingly, we award reasonable attorney's fees to the Basses for the work and time spent on the motion to continue the summary judgment and motion to take judicial notice of the entire record from the Quiet Title Litigation. We also award costs pursuant to I.A.R. 40 as a matter of course.

### III. CONCLUSION

The decisions of the district court are affirmed. The Basses are awarded reasonable attorney's fees for a portion of the appeal pursuant to Idaho Code section 12-121. The Basses are awarded costs pursuant to I.A.R. 40.

Chief Justice BEVAN, and Justices STEGNER, MOELLER and ZAHN, CONCUR.