396 P.2d 246

The PRUDENTIAL INSURANCE COMPA-
NY OF AMERICA, Appellant,

v.

Emma P. O'GRADY, Appellee.

No. 7762.

Supreme Court of Arizona.

En Banc.

Oct. 30, 1964.

Evans, Kitchel & Jenckes, by Ralph J. Lester, Phoenix, for appellant.

Howard P. Leibow and Henry Jacob-owitz, Phoenix, for appellee.

UDALL, Chief Justice.

This is an appeal by the Prudential Insurance Company of America, hereinafter referred to as the insurance company, from a judgment of the superior court awarding Emma P. O'Grady, hereinafter referred to as the appellee, the sum of $10,000 which amount represented the face value of an accidental death insurance policy on her husband.

The insurance is part of a group policy issued by the insurance company to Erie Railroad Company. The group policy, as well as the individual certificate issued to the insured Robert O'Grady under the group policy took effect on April 1, 1953, at which time the insured was an active employee of the Railroad in Ohio. The policy provides that it was issued and delivered in the State of Ohio and that it should be governed by the laws thereof. The beneficiary under the policy was Mr. Robert O'Grady's wife, the appellee.

The policy provided for a $10,000 death benefit when the insured "sustains bodily injuries effected solely through external, violent and accidental means, and, within 90 days after such injuries are incurred, suffers the loss of life, * * * as a direct result of such injuries and independently of all other causes * * *." The policy further provided in an exclusion that it "does not cover any loss which results from or is caused, directly or indirectly, by * * * disease or bodily * * * infirmity, * * *."

On February 29, 1960 in the early afternoon, the insured was found dead, lying face down, on the South shoulder of Camelback Road in Phoenix, Arizona. About ten minutes earlier the insured was involved in a motor vehicle accident. He was driving his car in an easterly direction on Camelback Road when his car was struck from the rear by another car. The force of the collision caused the insured to lose control of his car and impelled the car about 37 feet from the point of impact. After the collision the insured was able to get out of his car and speak briefly to the driver of the other car. He then started to walk to his home nearby when he dropped dead about a block or two from the scene of the accident.

The insured was under the care of Dr. Leslie Kober and prior to the accident he had been treated for diabetes and a heart condition (arteriosclerosis, enlarged heart,

irregular rhythm and high blood pressure). Various medications were prescribed for these conditions and at the time of the insured's last visit to Dr. Kober's office on February 16, 1960, his condition was fairly well regulated. He had not required any hospitalization during his two years in Phoenix for either his heart condition or diabetes.

The medical testimony of Dr. Kober at the trial was that the accident was directly responsible for his death at that time. He testified that but for the accident the insured probably would not have died when and as he did. The autopsy disclosed that the insured, who was 63 at the time of death, had a coronary thrombosis which had been present and in existence for a period of up to two or three days prior to the accident. According to the autopsy the insured's death was due to a coronary thrombosis.

Another medical doctor, Dr. Monroe H. Green, a heart specialist, testified that if the insured had not been involved in the accident he probably would not have died at that time and place. Dr. Green on cross-examination also testified that the accident acting upon the insured's heart condition caused his death. The consensus of medical opinion was that the accident probably caused the insured to experience a sudden trauma which his heart condition could not handle and that such sudden trauma as a

result of the accident was the immediate, precipitating cause of his death.

Upon submission of the case to the jury, the jury returned a verdict in favor of the insured's widow, the beneficiary, in the amount of the face value of the policy ($10,000). The insurance company moved for a new trial or a judgment notwithstanding the verdict, both of which were denied. The insurance company then brought this appeal.

■ The insurance company first contends that the trial court erred in applying the law of Ohio rather than the law of Arizona. The insurance company argues that the Ohio law was not properly before the lower court since the plaintiff did not introduce any evidence of what the law of Ohio is. They point out that the courts in Arizona will not take judicial notice of the law of another state and that such law must be pleaded and proved and in absence of such proof, the courts of Arizona will presume the law of another state to be the same as the law in Arizona. The insurance company cites Worsham v. Bauchard, 65 Ariz. 243, 179 P.2d 229 (1947) and Ruby v. United Sugar Companies, S.A., 56 Ariz. 535, 109 P.2d 845 (1941) in support of this proposition. Concededly these cases support the insurance company's contention. However, an examination of this problem will reveal that the reason for this rule has long since passed and when the reason for

the rule no longer exists, the rule itself should be abandoned. Stone v. Arizona Highway Commission, 93 Ariz. 384, 381 P. 2d 107. (1963).

The rule, derived from the common law of England, had a reason for its existence as before an English court, all foreign laws were composed in a foreign language and were based on an alien system. This of course did not lend itself to judicial notice. But the conditions are totally different in the sister states of this country. The law of another state is in our own language; its principles are substantially the same and their tenor is readily ascertained by reference to the reporter systems. The following language is from an American Bar Association Committee report quoted, in part, in Wigmore on Evidence, § 2573:

"By a curious anomaly of usage, inherited from the tradition of insular England, any State other than the State of the forum is for our country a 'foreign' State. Thus every one of our sister States in the Union is a 'foreign' State. So when that 'foreign' law becomes material, it is not (at common law) judicially noticed, and as an ordinary 'fact' it is to be evidenced to the jury and decided by them.

"In England this double rule led to little inconvenience, for the occasions in which the foreign-language law of France, Germany, or Italy came into issue in common-law traditions were relatively few. But in this Union of fifty independent jurisdictions, each one 'foreign' to the other (though not to the Federal courts), and each one's law constantly coming into issue in extra-State intercourse, the traditional rule became anomalous. In the first place, it is comparatively a simple matter to invoke judicial notice of a sister State's law in the usual manner, i. e., by producing the statutes and decisions of that State for information of the Court. And, in the second place, the proof of such law to the jury is unsatisfactory, in substituting the usual twelve laymen for the law-trained judge."

In this modern day with easy access to many law libraries with copies of the state statutes and the state and national reporter systems, and the obvious fact that the states are not "foreign" to each other, the reason for the common law rule no longer exists. As a matter of fact most of the jurisdictions of this country already take judicial notice of the laws of its sister states. To date twenty-seven states have enacted the Uniform Judicial Notice of Foreign Law Act which provides in pertinent part:

"Every court of this state shall take judicial notice of the common law and statutes of every state, territory and other jurisdiction of the United

States." 9A Uniform Laws Annotated, p. 320.

In addition several states have enacted other similar laws. See, e. g., Cal.Civ. Proc. Code, § 1875 and N.Y.Civ.Prac.Law and Rules, Rule 4511 (McKinney's).

Recently, the Nevada Supreme Court when faced with this same problem judicially discarded this outmoded rule. In Choate v. Ransom, 74 Nev. 100, 323 P.2d 700 (1958) the court said:

> "In our view it is time that we recognize that the statutes and reported court opinions of our sister states are a proper subject for judicial notice. Some states have apparently found it difficult to reach this conclusion. With reference to their troubles Dean Wigmore has bitingly remarked, 'Most of the foregoing quiddities are thoroughly unpractical. The judges manipulate an esoteric logical dreammachine which has caused them to forget the world of reality. Judicial power should be used to get at the facts more directly and candidly. The professional common sense, fortunately, began some time ago to revolt at the needless expenditure of effort involved in compelling formal proof of what was in most instances virtually indisputable. Particularly absurd was the technical insistence on treating the states of the Union as foreign to each other. * * *'"

■ It might be argued that such a change should come from the legislature, but it should be pointed out that this rule was judicially created. Because of its long survival it does not become invulnerable to judicial attack. The rule having been engrafted upon Arizona law by judicial enunciation it may properly be changed or abrogated by the same process. Stone v. Arizona Highway, supra. We also find that there is no inconsistency between the abandonment of this outmoded rule and Rules of Civil Procedure 44(d) and 44(e), 16 A.R.S. which merely in effect eliminated the necessity of calling an expert witness as required by the old rule.

With reference to the particular facts in this case it also cannot be argued that the insurance company did not have reasonable notice that the law of Ohio was going to be relied upon. In the very policy they issued, it was stated that the law of Ohio would govern. In addition, the plaintiff submitted instructions based upon Ohio law prior to the trial pursuant to local rule. Thus, the insurance company was well apprised of the fact that Ohio law was going to be involved.

■ With respect to the notion that such "foreign" law is a fact, we properly state that a determination of the state of the law in a "foreign" state remains essentially a question for the judge rather than for the jury. Choate v. Ransom, supra; Wigmore on Evidence § 2558. We

**14**

therefore hold that the constitution, statutes and reported court decisions of our sister states are a proper subject for judicial notice. Ohio law was properly before the lower court and the insurance company's contention to the contrary is without merit.

 The insurance company next contends that even under Ohio law they are entitled to a judgment. The most recent discussion of the Ohio law is in the case of Brucker v. Order of United Commercial Travelers, 217 F.2d 876 (7th Cir.1954). The fact situation in that case is similar to the case at bar. Although it is a federal decision it was clearly stated that Ohio law was being applied and the court analyzed the several Ohio decisions on the matter in reaching their conclusion. We feel that the court in Brucker properly interpreted the Ohio law and it is unnecessary to do so again here.

 The insurance company's next assignment of error deals with the trial court's refusal to give the insurance company's requested instruction based upon the law of Arizona. Since we have already found that the Ohio law was properly before the lower court, it would have been error to have given an instruction based upon the law of Arizona.

Judgment affirmed.

LOCKWOOD, V. C. J., and STRUCKMEYER, BERNSTEIN and SCRUGGS, JJ., concur.