480 P.2d 872

Howard WHITE, Plaintiff-Respondent,

v.

Beverly WHITE, Defendant-Appellant.

No. 10590.

Supreme Court of Idaho.

Feb. 10, 1971.

Racine, Huntley, Herzog & Olson, Pocatello, for defendant-appellant.

R. Don Bistline, Pocatello, for plaintiff-respondent.

McQUADE, Justice.

This is an appeal from a judgment below granting Howard White (plaintiff-respondent and husband) a divorce on the grounds of extreme cruelty from Beverly White (defendant-appellant and wife).

A series of divorce actions preceded the one resulting in the judgment which is appealed here. Appellant filed the first divorce action involving this marriage in Pennsylvania in 1961, alleging that her husband had been beating her. She dismissed the action before it came to trial. Respondent filed the second action in 1963 in Pennsylvania, based on allegations of "indignities and cruel and barbarous treatment." This action went to trial, and resulted in a judgment denying a divorce. In 1968, respondent came to Idaho and shortly thereafter filed another divorce action, which was dismissed for failure to establish residence. Respondent returned to Pennsylvania, quit his job there, withdrew his accumulated retirement funds, and returned to Idaho. After residing in Idaho for six weeks, he filed the action which resulted in the judgment here on appeal.

The trial court found that respondent severed all connections with Pennsylvania prior to his most recent move to Idaho, that he had moved into an apartment in Pocatello and had remained in Idaho until the date of trial, and had sought and found employment in Idaho. The court concluded that respondent was a "bona fide resident of the State of Idaho."

Respondent sought this divorce on the grounds of extreme cruelty. The trial court, on the basis of respondent's testimony, found that the parties had not lived together or cohabited for a period of five years, and that the appellant had associated with other men and kept late hours. These findings were made by the court, which concluded they constituted sufficient basis for awarding the divorce on the grounds of extreme cruelty. The court found that the grounds alleged had not been adjudicated in any other action.

Appellant contradicted the testimony of respondent, testifying that her husband had refused to live with her, but while living next door with his mother had frequently visited her at night and had sexual relations with her. She also disputed that she had associated in any wrongful sense with other men.

Respondent and appellant have a daughter who was eighteen years old at the time of the trial court's decision. She had been living with her mother, but was away from home attending college. The court applied Idaho's law in determining that the daughter was no longer of minor status, and therefore that respondent was not legally obligated to furnish child support.

■ Appellant contends the trial court erred in finding respondent was a resident of Idaho for six weeks preceding this action, as required by I.C. § 32–701. Respondent alleged in his complaint that he was a bona fide resident of Idaho. Evidence supportive of this contention was introduced at trial. Where the trial court has determined the issue upon substantial

and competent, though conflicting evidence, its finding will not be set aside on appeal.[1]

Respondent alleged in his complaint "that the parties have not cohabited or lived together now for a period of five years." Section 32–610, Idaho Code, provides:

"When married persons have heretofore lived or shall hereafter live separate and apart for a period of five (5) years or more without cohabitation, either party to the marriage contract may sue for a divorce which shall be granted on proof of the continuous living separate and apart without cohabitation of the spouses during said period * * *."

Though respondent did not ask for relief specifically on this ground, evidence to substantiate this allegation was entered at trial in the form of testimony on the cross-examination of both appellant and the parties' daughter, and by the testimony of respondent. The trial court found that the parties had not lived together or cohabited for a period of five years. This Court has repeatedly held it will not disturb findings of fact by the trial court, where the findings are based on substantial and competent though conflicting evidence.[2]

■■ The trial court based its judgment for respondent upon a finding of extreme mental cruelty. Appellant urges this Court to reverse the judgment as unsupported by the evidence and barred by the doctrine of res judicata. In particular, it is urged that respondent had previously brought an action in Pennsylvania for divorce, alleging mental cruelty, which was dismissed. We need not decide these issues, because the judgment of divorce must be affirmed on the basis of I.C. § 32–610. The pleadings did raise the § 32–610 ground, though relief was not specifically requested on that basis. As we have noted, the parties did litigate the facts necessary to the establishment of the § 32–610 ground for divorce, and the court made the appropriate findings. This Court will affirm the judgment below if it may be done on any theory supported by competent evidence.[3] The issue of the parties having lived separate for five years without cohabitation was raised in the pleadings, was litigated, and the trial court found the respondent's allegations as to this issue true.

■ The finding that the parties had not cohabited or lived together for a period of five years is sufficient to sustain the award of the divorce to respondent. The § 32–610 ground for divorce is based upon a public policy established by the legislature, that marriages are dissolvable upon application by either party, and proof of living separate without cohabitation for five years. Fault is immaterial.[4] Where the required facts are found by the trial court, the divorce must be granted.

■ Appellant also assigns as error the finding of the trial court that appellant was not entitled to child support because the child of the parties had reached majority age. It is contended that the law of Pennsylvania controls on the question of majority age, and that under Pennsylvania a child is a minor until that child reaches the age of twenty-one. The age of majority in Idaho is eighteen for females.[5] The only evidence presented at trial as to the law of Pennsylvania fixing majority age was the following testimony by appellant on cross-examination:

"Q. Your daughter will be 18 when?

"A. August 25.

1. Milbourn v. Milbourn, 86 Idaho 213, 218, 384 P.2d 476 (1963); Jolliffe v. Jolliffe, 76 Idaho 95, 100, 278 P.2d 200 (1954).

2. Idaho R.Civ.P. 52(a); Meredith v. Meredith, 91 Idaho 898, 901, 434 P.2d 116 (1967); Ferguson v. Ferguson, 91 Idaho 33, 34–35, 415 P.2d 676 (1966); Adams v. Adams. 89 Idaho 84, 90–91, 403 P.2d 593 (1965).

3. Fischer v. Fischer, 92 Idaho 379, 382, 443 P.2d 463 (1968); Berry v. Koehler, 86 Idaho 225, 233, 384 P.2d 484 (1963).

4. Wilson v. Wilson, 81 Idaho 375, 378, 341 P.2d 894 (1959).

5. I.C. § 32–101.

"Q. Has she finished high school?

"A. Yes, she graduated in June.

"Q. She becomes of age August 25 this year?

"A. She becomes of age when she is twenty-one.

"Q. Is it twenty-one in Pennsylvania?

"A. I understand it is, yes.

"Q. Did you know its eighteen out here?

"A. No, I did not."

This testimony does not establish the law of Pennsylvania on the age of majority. It is at best inconclusive testimony by a layman. The rule in Idaho has been that the proponent of the law of a sister state must prove such law, and Idaho courts cannot take judicial notice of a sister state's law.[6]

That rule was probably well founded at its inception. However, as one authoritative writer in the field of evidence has noted:

"It is easy to see how the difference of languages and inaccessibility of source-books should have led the English courts to develop the common law rule that the laws of foreign nations would not be noticed but must be pleaded and proved as facts. The assumption in the earlier cases in this country that the courts of one state must treat the laws of another state as foreign for this purpose is less understandable and to the afterview seems a deplorable instance of mechanical jurisprudence.

\*　\*　\*　\*　\*　\*

"Notice here could certainly be justified on the principle of certainty and verifiability, and the burden on the judge could be minimized by casting the responsibility upon counsel either to agree upon a stipulation as to the law or to produce on each side for the benefit of the court all materials necessary for ascertaining the law in question."[7]

The Idaho cases have generally borne out Professor McCormick's characterization that they "assumed" Idaho courts could not judicially notice laws of another state. In the earliest case, Moore v. Pooley,[8] the Court volunteered no supportive reasoning in holding that, in the absence of proof to the contrary, the law of Idaho was presumed to be the same as the law of Montana. The only supportive citation was an encyclopedia of the law of evidence. The next case, Maloney v. Winston,[9] held at page 763, 111 P. at page 1088,

"We cannot take judicial notice of the laws of a sister state. In the absence of pleading and proof as to what the laws are in a sister state, we must assume that the same law prevails in the foreign state that prevails here."

Again, the Court offered no supportive reasoning for this rule, though in this second case a long list of citations of authority from other jurisdictions in support of the rule was given. The Idaho cases affirming this rule that followed *Maloney* simply cited *Maloney* and its progency. Thus, has this assumedly necessary rule been carried forward to the present; it is more cumbersome than useful in its broad present day application. We can ascertain on reason why the courts of this state should not be allowed to dispense with the formal requirements of proof, at least as to the statutory law of other states, and instead employ judicial notice, upon the request of the proponent of the other state's law, to determine that law. The Supreme Court of New Hampshire has noted, in itself rejecting the old common law rule against judicial notice of sister states' laws,

"There is no sound legal theory that a judge knows the local law. If knowledge in all cases were assumed, briefs and arguments would be anomalous and inconsistent. When he does not know or have the law in mind, it is his duty to

---

6. Newell v. Newell, 77 Idaho 355, 361, 293 P.2d 663 (1956); Maloney v. Winston Bros. Co., 18 Idaho 740, 757, 763, 111 P. 1080 (1910).

7. C. McCormick, Evidence, § 326, at 696 (1954).

8. 17 Idaho 57, 104 P. 898 (1909).

9. 18 Idaho 757, 111 P. 1080 (1910).

find out what it is in cases calling for its application. He may take judicial notice of it, not because of a supposed knowledge, but because it is contrary to judicial policy that local law should be ascertained in the manner facts are proved under the law of evidence. He either knows it or has 'the most competent knowledge where to search for it.' " [10]

Modern communications have put the statutory compilations of other states within easy access of Idaho's courts. Where the laws of sister states are ascertainable with verifiable certainty those laws should be the subject of judicial notice by Idaho's courts, for the reasons supportive of judicial notice generally: economy of time and effort in the judicial process by doing away with the necessity of formal proofs of facts where such proofs are not necessary to the sure ascertainment of the particular facts.

Judicial notice of at least the statutory law of sister states is the majority rule today. Twenty-nine states have passed the Uniform Judicial Notice of Foreign Law Act, which makes judicial notice of the statutory and common law of sister states mandatory.[11] The Uniform Rules of Evidence add further authority to this position, providing:

"Judicial notice shall be taken without request by a party, of the common law, constitutions and public statutes in force in every state." [12]

■ Our legislature has not yet adopted either the Uniform Judicial Notice of Foreign Law Act or the Uniform Rules of Evidence, and we are not willing nor do we have the authority, as a matter of judicial fiat, to impose either act upon the Idaho legal system. We go only so far, today, as to repudiate the prohibition against judicial notice of the statutory law

of sister states. We hold that when a party to an action requests that the trial court notice the statutory law of a sister state, the trial court shall have the authority to ascertain that law, just as it has the authority to determine the law of Idaho. This is, in reality, a small step from the procedure provided by I.C § 9–304. That section provides:

"Printed books or pamphlets purporting on their face to be the session or other statutes of any of the United States, or the territories thereof, or of any foreign jurisdiction, and to have been printed and published by the authority of any such state, territory or foreign jurisdiction or proved to be commonly recognized in its courts, shall be received in the courts of this state as prima facie evidence of such statutes."

Thus by this statutory section, "proof" of a sister state's statutory law could be achieved simply by introducing a semi-official compilation of that law. This practice for all practical purposes has allowed Idaho courts to take judicial notice of the statutory law of sister states. Today we go one step further, eliminating the existing common law prohibition against judicial notice under the prescribed conditions.

■ In the case at bar, appellant made no request that the trial court take judicial notice of the law of Pennsylvania as to majority age. Having failed to request judicial notice of that law, she cannot now complain that the court did not exercise this power. A *request* for judicial notice of the law of a sister state serves the function of alerting the trial court to the contention that the law of another state is applicable, gives opposing counsel an opportunity to become familiar with that law, and enables the proponent to submit the applicable law.

10. Saloshin v. Houle, 85 N.H. 126, 155 A. 47, 51 (N.H., 1931). *Accord*, Choate v. Ransom, 74 Nev. 100, 323 P.2d 700, 703–794 (Nev., 1958); Prudential Insurance Co. of America v. O'Grady, 97 Ariz. 9, 396 P.2d 246, 249 (1964).

11. B. Jones, 1 The Law of Evidence, § 133, at 228 (5th ed., 1958).

12. Rule 9, Uniform Rules of Evidence.

■ In the absence of appellant submitting the Pennsylvania statute, the trial court was fully justified in applying Idaho law. The denial of child support upon the premise that the parties' daughter had reached majority was thus well founded. The decision of the district court is affirmed. Costs to respondent.

McFADDEN, C. J., and DONALDSON and SPEAR, JJ., concur.

SHEPARD, Justice (concurring specially).

I concur in the result reached by the majority opinion. I do not agree, however, with the reasoning by which the majority opinion reaches the result. At issue at the trial of this matter, among other things, was the desire of the appellant to be awarded child support for a female child above the age of 18 but less than the age of 21. Appellant stated that the age of majority for a female in Pennsylvania was 21 years. The trial court held, and the majority opinion herein supports the view, that it was unnecessary for the trial court and is unnecessary in this Court to determine the age of majority in Pennsylvania since it is presumed to be the same as in Idaho absent compliance with our statutes which set forth the method of proving the law of a foreign jurisdiction or, as the majority states, in the absence of a specific request by counsel that the trial court notice judicially the law of Pennsylvania. With that reasoning I cannot agree.

As the majority opinion points out, modern communications have put the statutory compilations of other states within easy access of Idaho courts. Where the laws of sister states are ascertainable with verifiable certainty, those laws should be the subject of judicial notice by Idaho's courts, for the reasons supportive of judicial notice generally: economy of time and effort in the judicial process by doing away with the necessity of formal proofs of facts where such proofs are not necessary to the sure ascertainment of the particular facts.

To require, as the majority opinion suggests, that counsel must "request" judicial notice is to ignore the true meaning of the term. Judicial notice is "the act by which a court in conducting a trial or framing its decision, will, of its own motion, and without the production of evidence, recognize the existence and truth of certain facts * * *." Blacks Law Dictionary, Revised 4th Edition, 1968.

In the case at bar the facts are claimed to have required the application of Pennsylvania law. Under the statutes of that jurisdiction a female reaches majority at the age of 21. Pennsylvania Statutes Annotated, Title 46, Section 601, Part 62. It is my opinion that the court below and the court here should notice and recognize such statute.

There was, however, a complete lack of showing at the trial court level as to the status of the female child in question. There was no showing as to any sums necessary to be expended for the support of the said "child" nor whether she was or was not emancipated or living with the defendant. The inference contained in the testimony was that she would not be living with the defendant but would be attending college in a place unknown and at a cost unknown. There was no argument at trial or here that under Pennsylvania law plaintiff would be required to pay the costs of a college education for his child. In the absence of any of these showings, I conclude that it was proper for the trial court to deny child support to the appellant and I therefore concur in the result reached by the majority opinion.