**IN THE SUPREME COURT OF THE STATE OF IDAHO**
Docket No. 48825

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **Boise, April 2023 Term** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Opinion Filed: August 18, 2023** |
| | ) | |
| **v.** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **MARK CHARLES WILSON,** | ) | **SUBSTITUTE OPINION, THE** |
| | ) | **COURT'S PRIOR OPINION DATED** |
| **Defendant-Appellant.** | ) | **MAY 11, 2022, IS WITHDRAWN** |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Custer County. Joel E. Tingey, District Judge.

The judgment of the district court is <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for Appellant, Mark Charles Wilson. Kimberly A. Coster argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent, State of Idaho. Andrew V. Wake argued.

_____

STEGNER, Justice.

Mark Wilson was charged in Custer County with unlawful possession of a firearm in violation of Idaho Code section 18-3316. The charge also carried with it a persistent violator sentencing enhancement. In a bifurcated trial, a jury first found Wilson guilty of unlawful possession of a firearm. The jury then found Wilson subject to the persistent violator sentencing enhancement based on his criminal history. Wilson appealed, and his case was assigned to the Idaho Court of Appeals. Wilson argued that the State had failed to present sufficient evidence that he had been convicted of at least one previous felony at the time he possessed a firearm. Wilson further argued that the State failed to present sufficient evidence that he had been convicted of two prior felonies, an essential prerequisite for the persistent violator enhancement. The Court of Appeals affirmed Wilson's conviction and the appropriateness of the sentencing enhancement. Wilson petitioned this Court for review, which we granted. For the reasons set forth below, we affirm Wilson's conviction and sentence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2019, Mark Wilson was convicted of first degree murder for shooting his housemate, Patricia Brown, with a firearm he had borrowed from a neighbor. In a separate case (which involves Wilson's current appeal), Wilson was charged with unlawful possession of a firearm in violation of Idaho Code section 18-3316. The firearm in question was the same firearm used in the murder of Brown. Wilson waived a preliminary hearing and was bound over to district court. An Information was filed charging Wilson with unlawful possession of a firearm. Wilson pleaded not guilty. The case was set for trial.

Wilson moved for a change of venue in the unlawful possession of a firearm case, arguing that "[i]t would be hard to find a potential juror in Custer County who has not heard about the death of Patricia Brown and the arrest of Mark Wilson, and talked to someone about the case, and formed an opinion about what happened." Wilson noted that a motion to change venue had been granted in the first degree murder case and would be appropriate in this case for similar reasons. The district court denied Wilson's motion.

After Wilson was found guilty in the murder case, the State filed an Amended Information in the unlawful possession of a firearm case, this time including a persistent violator sentencing enhancement. The State alleged Wilson had committed a new felony, as a result of his alleged possession of a firearm and having been convicted of two prior felonies: (1) Battery with Intent to Commit a Serious Felony in Custer County in 2006; and (2) First Degree Murder (of Brown) in Custer County in 2019. Wilson filed another motion to change venue in the unlawful possession case, or, in the alternative, a motion to continue the trial, this time arguing that it would be difficult to find an impartial jury in Custer County due to his recent guilty verdict in the murder case. Wilson also noted that he was set to be sentenced for the murder conviction on August 8, 2019, and his trial for the unlawful possession charge was set for August 21, 2019. The district court granted the motion to change venue, ordering that the trial take place in Bonneville County. The district court also continued the unlawful possession trial until September 18, 2019, in an apparent effort to allow media attention to abate.

Wilson filed a motion to dismiss the persistent violator sentencing enhancement, arguing that the newly charged felony (unlawful possession of a firearm) and one of the prior two felonies (first degree murder) had both arisen out of the same incident. Wilson contended that because these

2

two alleged crimes had occurred as part of the same event, the State should have charged both simultaneously.

At the hearing, the district court declined to rule on Wilson's motion to dismiss without further briefing. The parties discussed the propriety of including the persistent violator enhancement in the Amended Information for an action that occurred at the same time as the murder. The State then moved to file a Second Amended Information, which the district court permitted. The State's Second Amended Information removed the murder of Brown as a prior felony as a basis for seeking the sentencing enhancement, and instead alleged that Wilson's two prior felony convictions were: (1) Battery with Intent to Commit a Serious Felony in Custer County (2006); and (2) Criminal Sexual Conduct, Second Degree in Jackson County, Michigan (1990).

In a motion in limine, Wilson admitted to "all of the material elements relating to the charge of Unlawful[] Possession of a Firearm with the exception of the element that he previously had been convicted of a felony." Wilson moved to exclude any evidence not related to his alleged prior felony convictions. The district court accepted the admission and granted Wilson's motion. Thus, the only issue for trial on the charge of felon in possession of a firearm was whether Wilson had been previously convicted of a felony. The case proceeded to a bifurcated trial. During phase one, the jury would decide whether Wilson had been convicted of at least *one* prior felony and was, therefore, guilty of unlawful possession of a firearm. If the jury found Wilson guilty, then the trial would proceed to its second phase, in which the jury would decide whether Wilson had been convicted of *two* prior felonies and would, therefore, be subject to an enhanced sentence as a persistent violator under Idaho Code section 19-2514.

During the first phase of trial, the State called Custer County Sheriff's Deputy Levi Maydole as its first and only witness. Maydole testified that Wilson had been charged with "attempted strangulation" in Custer County in 2006. The State then sought to admit a judgment of conviction for a "Mark Charles Wilson" for Battery with Intent to Commit a Serious Felony in Custer County in 2006. The district court admitted the exhibit as a certified public record over Wilson's objections asserting hearsay and lack of foundation. The State next sought to admit another "Judgment of Sentence" which evidenced a 1990 conviction of a "Mark Charles Wilson" for Criminal Sexual Conduct, 2nd Degree, from Jackson County, Michigan. The district court admitted the exhibit over the same objections by Wilson.

3

Finally, the State sought to admit an excerpt of the Michigan Penal Code, specifically Section 750.520c, Criminal Sexual Conduct in the Second Degree. Wilson objected, arguing that the copy produced by the State represented the *current* state of Michigan law, but that the statute had been amended multiple times since Wilson's purported conviction in 1990. The district court admitted the exhibit, stating

> I think the [c]ourt's entitled to take judicial notice of state statutes, including Penal Code. I recognize that there's an issue as to weight if it doesn't cover the time period in question, but I'll let that be part of the argument that is going to the jury about the weight of the document. And [there] does not appear to be any genuine dispute that that's the current code section.

After cross-examination and re-direct examination of Maydole, the State rested. Wilson orally moved for a judgment of acquittal, arguing that the State had "failed to show sufficient evidence to carry its burden of proof beyond a reasonable doubt, [1] that Wilson was the same Mark Wilson convicted in 1990 in Michigan, and [2], that it was a felony." The district court denied Wilson's motion. The district court then concluded that whether the Michigan statute was a felony was a question of law for the district court to decide. Wilson's counsel asked the district court if he would be allowed to "argue to the jury that there hasn't been evidence put in that it is a felony." The district court responded, "no, you can't because I've made that finding . . . that the Michigan statute is a felony and can be the basis for finding unlawful possession of a firearm by a felon." The district court further concluded that criminal sexual conduct in the second degree "was a felony at the time of the conviction."

Wilson did not present any evidence, and the case proceeded to closing arguments. The first verdict form the jury was given asked only whether Wilson was guilty of unlawful possession of a firearm. The jury found Wilson guilty on that charge. Because the jury found Wilson guilty of unlawful possession of a firearm, the trial proceeded to its second phase regarding the persistent violator sentencing enhancement. Neither the State nor Wilson presented any additional evidence during this second phase. The jury returned a verdict finding that Wilson had been convicted of (1) Criminal Sexual Conduct, 2nd Degree, and (2) Battery with Intent to Commit a Serious Felony. In so deciding, the jury found that Wilson was a persistent violator and, as a result, subject to a sentencing enhancement.

Wilson moved for a judgment of acquittal regarding the persistent violator sentencing enhancement pursuant to Idaho Criminal Rule 29. Wilson argued that (1) the jury, not the judge, should have made the determination whether the Michigan conviction was a felony, and (2) the

4

State failed to meet its burden of proving the Michigan conviction was a felony. At the hearing, the district court denied the motion for a judgment of acquittal but *sua sponte* considered Wilson's motion as an alternative motion for a new trial, conceding that

> I think that was reversible error on my part when I made the decision as a matter of law that the violation of the Michigan statute was a felony. . . . The case law I've seen indicates that is part of the burden of proof on the State and something that the trier of fact needs to determine.

The district court then vacated the jury's finding that Wilson was subject to the persistent violator enhancement and ordered a new trial.

Wilson declined to proceed with a new trial and instead entered a conditional guilty plea to the persistent violator enhancement, reserving his right to appeal. The case proceeded to sentencing. The district court sentenced Wilson to three years fixed, followed by twelve years indeterminate, for a total of fifteen years. The district court ordered this sentence to run consecutively to Wilson's sentence on the murder conviction. Wilson timely appealed and the Idaho Court of Appeals affirmed. *State v. Wilson*, No. 47553, 2021 WL 668012, at *1 (Idaho Ct. App. Feb. 22, 2021). Wilson then petitioned this Court for review, which was granted. We also affirmed. *State v. Wilson*, No. 48825, 2022 WL 1482043, at *1 (Idaho May 11, 2022). Wilson subsequently petitioned this Court for rehearing. We granted Wilson's petition for rehearing and, for the reasons discussed below, again affirm.

## II. STANDARD OF REVIEW

"When reviewing a case on petition for review from the Court of Appeals this Court gives due consideration to the decision reached by the Court of Appeals, but directly reviews the decision of the trial court." *State v. Hoskins*, 165 Idaho 217, 220, 443 P.3d 231, 234 (2019) (quoting *State v. Daly*, 161 Idaho 925, 927, 393 P.3d 585, 587 (2017)). "Appellate review of the sufficiency of the evidence is limited in scope." *State v. Clark*, 168 Idaho 503, 506, 484 P.3d 187, 190 (2021) (quoting *State v. Gomez-Alas*, 167 Idaho 857, 861, 477 P.3d 911, 915 (2020)).

> On a complaint of insufficiency of evidence, the appropriate standard of review is whether there is substantial and competent evidence to support the jury's verdict. *State v. Aragon*, 107 Idaho 358, 366, 690 P.2d 293, 301 (1984). Further, the function of the appellate court is to examine the supporting evidence, not to reweigh the significance of the evidence as it relates to specific elements. *Id.* All facts and inferences are to be construed in favor of upholding the lower court's decision. *Id. See also State v. Filson*, 101 Idaho 381, 386, 613 P.2d 938, 943 (1980) (where there is competent evidence to sustain a verdict, the reviewing court will not reweigh that evidence).

*State v. Bush*, 131 Idaho 22, 32–33, 951 P.2d 1249, 1259–60 (1997).

"[T]he standard of review for a motion for judgment of acquittal under [Idaho Criminal Rule] 29(c) is whether there was substantial evidence upon which a trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Hoyle*, 140 Idaho 679, 684, 99 P.3d 1069, 1074 (2004).[1]

### III. ANALYSIS

### A. The State presented sufficient evidence that Wilson had previously been convicted of a felony, which supported Wilson's unlawful possession of a firearm charge.

Because Wilson admitted that he had been in possession of a firearm, the only issue for trial was whether Wilson had previously been convicted of a felony. In the first stage of the bifurcated trial, the jury convicted Wilson of unlawful possession of a firearm in violation of Idaho Code section 18-3316, concluding that he had previously been convicted of a felony when he possessed the firearm.

On appeal, Wilson argues that the State failed to meet its burden because it had not produced legally sufficient evidence that Wilson had been previously convicted of a felony at the time he possessed the firearm. Wilson contends that Maydole—the State's only witness—did not have any independent knowledge that Wilson was the same Mark Charles Wilson that had been convicted of battery in Custer County in 2006. Wilson asserts that the State did not present evidence of Wilson's identity other than his name. Although Maydole testified to Wilson's purported birthdate, he had "no personal knowledge" of Wilson's birthdate and admitted that he only knew the date because he had just read it from the State's exhibit. Wilson argues that Maydole's testimony did not connect him to the judgment of conviction presented by the State.

In response, the State argues that the evidence was sufficient to prove that Wilson had previously been convicted of a felony. The State points to the certified copy of the Judgment of

---

[1] Wilson aptly points out a typographical error in this Court's enunciation of the standard of review on a judgment of acquittal. This Court's opinion in *State v. Clark*, 161 Idaho 372, 374, 386 P.3d 895, 897 (2016), incorrectly describes the standard of review as follows: "In reviewing the denial of a motion for judgment of acquittal, the appellate court must independently consider the evidence in the record and determine whether a reasonable mind could conclude that the defendant's guilt as to such material *evidence* of the offense was proven beyond a reasonable doubt." *Id.* (Italics added.) *Clark* quotes this Court's opinion in *State v. Mercer*, 143 Idaho 108, 109, 138 P.3d 308, 309 (2006), which quotes our opinion in *State v. Grube*, 126 Idaho 377, 386, 883 P.2d 1069, 1078 (1994). *Grube* cites to the Idaho Court of Appeals opinion *State v. Printz*, which correctly sets forth the standard of review: "Review of a denial of a motion for judgment of acquittal requires the appellate court to independently consider the evidence in the record and determine whether a reasonable mind would conclude that the defendant's guilt as to each material *element* of the offense was proven beyond a reasonable doubt." 115 Idaho 566, 567, 768 P.2d 829, 830 (Ct. App. 1989) (italics added).

6

Conviction from Custer County and argues that it introduced "considerably more" evidence than just Wilson's name. The State relies solely on the testimony of Maydole, who worked at the Custer County Sheriff's Department in 2005 and 2006, contending that Maydole personally knew Wilson and that Wilson had been convicted of a felony. The State refutes Wilson's claim that Maydole had no personal knowledge of Wilson's birth date, asserting that Maydole merely did not remember his birth date "off the top of his head," but had reviewed Wilson's booking information prior to testifying and relied on that memory. The State concludes that the evidence, taken together, "was more than sufficient for a reasonable jury to conclude—as this one did—that Wilson was the convicted defendant in the 2006 Idaho case."

Idaho Code section 18-3316(1) provides:

A person who previously has been convicted of a felony who purchases, owns, possesses, or has under his custody or control any firearm shall be guilty of a felony and shall be imprisoned in the state prison for a period of time not to exceed five (5) years and by a fine not to exceed five thousand dollars ($5,000).

As noted, Wilson admitted that he was in possession of the firearm, leaving only one remaining issue for trial: whether Wilson had previously been convicted of a felony.

We conclude that the State presented sufficient evidence to prove that Wilson was the same Mark Charles Wilson convicted of battery in Custer County in 2006. "This Court will not overturn a judgment of conviction, entered upon a jury verdict, where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt." *State v. Parton*, 154 Idaho 558, 569, 300 P.3d 1046, 1057 (2013) (quoting *State v. Sheahan*, 139 Idaho 267, 285, 77 P.3d 956, 974 (2003)). "We view the evidence in the light most favorable to the prosecution, and we do not substitute our judgment for that of the jury regarding the credibility of the witnesses, the weight of the evidence, and the reasonable inferences to be drawn from the evidence." *Id.* (quoting *State v. Oliver*, 144 Idaho 722, 724, 170 P.3d 387, 389 (2007)). "Evidence is substantial if a reasonable jury could have relied upon it in determining that the allegation was proved beyond a reasonable doubt." *Id.*

This Court has previously explained that, in the absence of contradictory evidence, the prosecution's submission of a judgment of conviction bearing the defendant's full name and date of birth is sufficient evidence for a jury to rely upon to find that the defendant was the person convicted of the crime. *Id.* In *Parton*, the prosecution attempted to prove that the defendant, Darin

7

Parton, had previously been convicted of a felony in Washington. *Id.* To do so, the prosecution submitted a Washington judgment. *Id.* "The name of the defendant on the judgment was 'DARIN WILLIAM PARTON' and his date of birth was '08/31/71,' which [were] identical to Defendant's full name and date of birth." *Id.* (Capitalization in original.) On appeal, Parton argued that this was insufficient evidence to prove beyond a reasonable doubt that he "was the person convicted in the Washington judgment." *Id.* This Court rejected Parton's argument, reasoning:

> The Washington judgment was admitted without objection. . . . No contradictory evidence was presented, nor was there any argument that Defendant had a common name. The jury was not required to reach its verdict beyond any possible doubt. It was only required to conclude, beyond a reasonable doubt, that the Darin William Parton named in the Washington judgment was the same Darin William Parton on trial in this case. The jury's verdict finding that it was is supported by substantial evidence.

*Id.* at 569–70, 300 P.3d at 1057–58.

Wilson has not argued that *Parton* was wrongly decided, nor has he in any way contested the continuing viability of this Court's decision in *Parton*. As such, we are bound to apply it here. In this case, the State bore the burden of proving beyond a reasonable doubt that Wilson had previously been convicted of a felony to convict him of unlawful possession of a firearm.

In order to do so, the State presented the testimony of Maydole. First, Maydole testified that he was "familiar" with Mark Charles Wilson because of Maydole's employment at the Custer County Sheriff's Department and generally from the small community of Challis. Maydole testified that he was aware that Wilson had pleaded guilty to Battery with Intent to Commit a Serious Felony in 2006, even though Maydole had no personal involvement in that case. The evidence submitted by the State also included the Custer County judgment of conviction, which identified "Mark Charles Wilson" with a date of birth of 07/30/1964 and a social security number. The State did not present any independent evidence of Wilson's social security number, nor did it admit any photographs of Wilson; however, Maydole testified to Wilson's birthdate and that it matched that birthdate shown on the judgment admitted by the State.

While the State certainly could have presented *more* evidence establishing Wilson's identity, we conclude that the testimony of Maydole and the Custer County judgment of conviction were sufficient to support the jury's finding that Wilson had been convicted of at least one prior felony, and therefore, unlawfully possessed a firearm. The Custer County judgment of conviction identified Wilson's full name and birth date. The judgment also clearly listed that the underlying

crime was a felony. Maydole also testified that he knew Wilson from the community and that he had previously been convicted of a felony in Custer County in 2006. Under this Court's decision in *Parton*, this evidence was sufficient for a jury to conclude that Wilson had been convicted of at least one prior felony. Consequently, we affirm Wilson's conviction for unlawful possession of a firearm.

**B. The State presented sufficient evidence that Wilson had previously been convicted of two felonies, which supported the persistent violator sentencing enhancement.**

The bifurcated trial moved into its second phase after the jury found Wilson guilty of unlawful possession of a firearm. The next question for the jury was whether Wilson had been previously convicted of *two* prior felonies, which would require the district court to impose the persistent violator sentencing enhancement. *See* I.C. § 19-2514. Prior to submitting the case to the jury, the district court ruled that whether the Michigan crime was a felony was a question of law to be decided by the district court, rather than the jury. The district court further concluded that, based on its own research, the Michigan crime was a felony in 1990 when Wilson was convicted in Michigan. Neither party submitted additional evidence. The jury answered "yes" when asked whether Wilson had been convicted of: (1) Criminal Sexual Conduct, 2nd Degree; and (2) Battery with Intent to Commit a Serious Felony.

Wilson moved for a judgment of acquittal on the persistent violator sentencing enhancement, which the district court denied.[2] The district court did, however, grant a new trial because it determined that the jury should have made the determination of whether the Michigan conviction was a felony based on the evidence presented by the State. No new trial took place because Wilson pleaded guilty to the persistent violator enhancement, reserving his right to appeal.[3]

On appeal, Wilson again asserts that the State failed to meet its burden of proving beyond a reasonable doubt that Wilson had been convicted of two prior felonies. Even if the evidence was sufficient to show that Wilson had been convicted of two prior *crimes*, Wilson contends that the

---

[2] We note that a judgment of acquittal is not the appropriate way to describe the relief sought by Wilson. A sentencing enhancement is not a separate charge. *State v. Passons*, 163 Idaho 643, 646, 417 P.3d 240, 243 (2018). Rather, it simply increases the potential sentence that shall be imposed if the defendant has committed two felonies prior to being convicted of a third. *See id.*

[3] Pleading "guilty" to the sentencing enhancement is something of a misnomer. A sentencing enhancement either applies to a given charge or it does not. However, in acknowledging that a sentencing enhancement applies, the defendant is admitting that his criminal history is sufficient for a sentencing enhancement to apply. Therefore, while pleading "guilty" may be technically inaccurate nomenclature, it suffices for the sentencing enhancement to apply to a particular defendant. *See* I.C. § 19-2514.

State failed to prove that both prior convictions, particularly the Michigan conviction, were *felonies*. Wilson points out that the State's copy of the Michigan Penal Code reflected the crime of criminal sexual conduct in the second degree as it appeared in 2019, as opposed to in 1990 when Wilson was purportedly convicted. Wilson also notes that the copy admitted by the State showed that the statute had been amended five times since 1990, and as such, the State should have presented the version of the statute that was in effect in 1990.

In response, the State first asserts that Wilson has failed to preserve his argument that the State presented insufficient evidence that: (1) He was the Mark Charles Wilson who committed criminal sexual conduct in Michigan in 1990; and (2) the Michigan conviction was a felony. The State next argues that it presented sufficient evidence to support the jury's conclusion that Wilson had been convicted of both the Custer County offense and the Michigan offense. The State primarily relies on the same arguments it did in arguing that it presented sufficient evidence of the unlawful possession charge, pointing to the judgments of conviction admitted at trial, and contending that the jury could "infer" that Wilson was the same defendant listed in the Michigan conviction because the Custer County conviction had the same name and birthdate.

Next, the State argues that Wilson's argument should have focused on the jury instructions and verdict forms, which Wilson did not object to, rather than the sufficiency of the evidence. The State again attacks Wilson for "failing to preserve" this issue because he did not object to the instructions given during either phase of the bifurcated trial. The State continues its argument by alleging that the evidence that the Michigan conviction was a felony was sufficient. The State argues that the jury "knew" that Wilson had been convicted by a Michigan jury, was sentenced to one year of incarceration, that the sentence had been suspended and he was only given two months' probation, and that "the criminal statute reflected in the judgment against Wilson criminalized very serious criminal conduct and made that conduct a felony." The State concludes its argument by asserting that there "is no reason at all to believe that the [Michigan] offense was a misdemeanor when Wilson was convicted of it."

Wilson responds, first arguing that his conditional guilty plea, which "reserve[d] his right to appeal any and all decisions that the [district] court has made to this point," properly preserved his arguments on appeal. Specifically, Wilson contends that his motion for a judgment of acquittal, which the district court denied both orally and by written order, argued that the State failed to present sufficient evidence that both of Wilson's prior convictions were felonies.

Wilson next asserts that neither the jury instructions nor the verdict forms were objectionable; in fact, Wilson argues the State invited any error by arguing at trial that it did not need to present evidence that the Michigan conviction was a felony. Wilson clarifies that the appropriate remedy on appeal is a judgment of acquittal on the persistent violator charge.

Idaho Code section 19-2514 governs sentence enhancements for defendants who have been convicted of three felonies:

> Any person convicted for the third time of the commission of a felony, whether the previous convictions were had within the state of Idaho or were had outside the state of Idaho, shall be considered a persistent violator of law, and on such third conviction shall be sentenced to a term in the custody of the state board of correction which term shall be for not less than five (5) years and said term may extend to life.

At the outset, we conclude that Wilson has properly preserved the issues he raised on appeal. Wilson objected to the evidence admitted at trial and urged the district court to allow the jury to make the finding of whether the prior convictions were felonies. Further, Wilson moved for a judgment of acquittal (1) after the State rested in the first phase of the bifurcated trial, and (2) after the jury convicted Wilson of the persistent violator sentencing enhancement, both times alleging that the State failed to present sufficient evidence that the Michigan conviction was a felony. The record clearly reflects that Wilson properly preserved the issues on appeal.

Accordingly, we now turn to the two remaining issues on appeal: (1) whether the State presented sufficient evidence for the jury to conclude Wilson was the person convicted of the Michigan crime ("the identity issue"); and (2) whether the district court erred in making the determination that the Michigan crime was a felony ("the felony issue").

*1. The Identity Issue*

We first conclude that the State presented sufficient evidence for a jury to find that Wilson was the same "Mark Charles Wilson" convicted of second degree criminal sexual conduct in Michigan in 1990. As we explained above, a defendant's full name and date of birth matching those on a judgment of conviction may be sufficient evidence to prove that that defendant was the person convicted of that crime. *Parton*, 154 Idaho at 569, 300 P.3d at 1057. Here, the Michigan "Judgment of Sentence" put forth by the State at trial "showed that a 'Mark Charles Wilson,' with a birth date of 07/30/1964, was convicted of 'Criminal Sexual Conduct, 2d Degree.'" The full name and birthdate of the Michigan defendant matched the full name and birthdate of the "Mark Charles Wilson" who was the same person sitting in the courtroom in Bonneville County facing a

11

sentencing enhancement because he now had three felony convictions. As discussed above, the State put forth sufficient evidence that Wilson was the same Mark Charles Wilson who had been convicted of the 2006 Custer County felony. Accordingly, because the full name and date of birth of the Mark Charles Wilson on the Custer County judgment of conviction match the full name and date of birth of the Mark Charles Wilson on the Michigan "Judgment of Sentence," the State presented sufficient evidence that, pursuant to this Court's decision in *Parton*, Wilson was the same Mark Charles Wilson convicted of the Michigan crime.

### 2. *The Felony Issue*

We next conclude that the district court did not err in classifying the Michigan crime as a felony.[4] Prior to the release of this Court's decision in *State v. Adkins*, 171 Idaho 254, 519 P.3d 1194 (2022), the question of whether a defendant's prior conviction was a felony was a question generally submitted to the jury. *See, e.g.*, *State v. Harris*, 160 Idaho 729, 730–31, 378 P.3d 519, 520–21 (Ct. App. 2016).

After Wilson submitted his petition for rehearing but before oral argument on rehearing, this Court released its decision in *Adkins*. In *Adkins*, this Court was tasked with determining whether a jury or a court was responsible for determining whether an offense was a felony in a concealment of the evidence case. 171 Idaho at 255–56, 519 P.3d at 1195–96. This Court concluded that determination was the responsibility of a court, overruling its prior decision in *State v. Yermola*, 159 Idaho 785, 367 P.3d 180 (2016). *Id.* at 256, 519 P.3d at 1196. We explained:

> Our decision in *Yermola* failed to account for the difference between adjudicative and legal facts. An adjudicative fact is "[a] controlling or operative fact, rather than a background fact; a fact that is particularly related to the parties to a proceeding and that helps the tribunal determine how the law applies to those parties." *State v. Lemmons*, 158 Idaho 971, 974, 354 P.3d 1186, 1189 (2015) (quoting Black's Law Dictionary 610 (7th ed. 1999)). A legal fact is "[a] fact concerning the state of the law." *Fact*, Black's Law Dictionary (11th ed. 2019). In a jury trial, it is for the jury to determine adjudicative facts. *Lemmons*, 158 Idaho at 974, 354 P.3d at 1189. By contrast, the determination of legal facts—in other words, stating what the law is— is unquestionably the role of the court. *See United States v. Gaudin*, 515 U.S. 506, 513, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) (recognizing that juries are not empowered to decide pure questions of law); *see also* I.C.J.I. 202 ("As members of the jury it is your duty to decide what the facts are and to apply those facts to the law that [the court has] given you."). By requiring the jury to determine what the

---

[4] Wilson does not challenge in his briefing the classification of the Michigan crime as a felony. He makes no arguments that the classification itself is incorrect. Rather, he limits his arguments to whether the district court erred in the manner in which it determined the Michigan crime to be a felony.

> underlying offense was *and* whether the underlying offense was a felony, *Yermola* vested the jury with the power to determine both the salient facts and the law. *See Yermola*, 159 Idaho at 789, 367 P.3d at 183. This is contrary to the well-established distinction between the roles of the judge and jury. *See Gaudin*, 515 U.S. at 513, 115 S.Ct. 2310.

*Id.* at 256–57, 519 P.3d at 1196–97 (alterations and italics in original).

Albeit in *dicta*, we also discussed the persistent violator enhancement statute. *Id.* at 257, 519 P.3d at 1197. We noted that, like a concealment of evidence defendant, a persistent violator enhancement "defendant's criminal liability is affected by the felony status of a crime other than the one for which he or she is on trial." *Id.* This Court explained that "the jury's role in these cases is limited to deciding adjudicative facts, such as whether the defendant is the same as a person named in a prior judgment of conviction for a specific offense." *Id.* "To the extent there is a question about the legal classification of the prior offense, that is a matter of statutory interpretation—a purely legal question for the court." *Id.*

We hold that, under *Adkins*, the determination of whether a prior conviction was a felony is a "legal fact" to be decided by a court rather than a jury. To hold otherwise would improperly "vest[] the jury with the power to determine both the salient facts and the law." *See id.* Accordingly, the district court correctly determined that it, not the jury, must determine whether the Michigan crime was a felony.

We further conclude that the district court did not err in taking judicial notice of the Michigan statute. Wilson relies on *White v. White*, 94 Idaho 26, 30–31, 480 P.2d 872, 876–77 (1971), for the proposition that the State was required to submit evidence to the district court that the Michigan crime was a felony. In *White*, this Court "eliminat[ed] the existing common law prohibition against judicial notice" of foreign statutes, but it did so only "under the prescribed conditions." *Id.* at 30, 480 P.2d at 876. The *White* Court held that the proponent of the foreign law was required to "request that the trial court take judicial notice of the law[.]" *Id.* The Court explained its reasoning behind this requirement:

> A request for judicial notice of the law of a sister state serves the function of alerting the trial court to the contention that the law of another state is applicable, gives opposing counsel an opportunity to become familiar with that law, and enables the proponent to submit the applicable law.

*Id.* The Court held that, "[h]aving failed to request judicial notice of [the foreign] law, [the proponent of the law] cannot now complain that the court did not exercise [the] power" to take judicial notice. *Id.*

13

In crafting the requirement that the proponent of a foreign statute must supply the statute to the trial court, the *White* Court noted that, at the time, at least "[t]wenty-nine states ha[d] passed the Uniform Judicial Notice of Foreign Law Act, which makes judicial notice of the statutory and common law of sister states mandatory." *Id.* (footnote omitted). The Court also noted that "[t]he Uniform Rules of Evidence add further authority to this position, providing: 'Judicial notice shall be taken without request by a party, of the common law, constitutions and public statutes in force in every state.'" *Id.* (footnote omitted). This Court refused to adopt this mandatory rule, explaining:

> Our legislature has not yet adopted either the Uniform Judicial Notice of Foreign Law Act or the Uniform Rules of Evidence, and we are not willing nor do we have the authority, as a matter of judicial fiat, to impose either act upon the Idaho legal system. We go only so far, today, as to repudiate the prohibition against judicial notice of the statutory law of sister states. We hold that when a party to an action requests that the trial court notice the statutory law of a sister state, the trial court shall have the authority to ascertain that law, just as it has the authority to determine the law of Idaho.

*Id.*

The *White* Court did not explain why it viewed itself as lacking the authority to craft a rule regarding judicial notice. *See id.* However, this Court (rather than the legislature) has the authority to craft such rules if it chooses to do so. The Idaho Constitution states that "[t]he legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of the government[.]" IDAHO CONST. art. V, § 13. This Court has previously held that it "has the inherent power to make rules governing the procedure in all of Idaho's courts." *State v. Weigle*, 165 Idaho 482, 486, 447 P.3d 930, 934 (2019) (quoting *Talbot v. Ames Constr.*, 127 Idaho 648, 651, 904 P.2d 560, 563 (1995)). Rules regarding judicial notice of foreign statutes are procedural in nature. *See* I.R.C.P. 44(c)(1) (governing the procedure for taking judicial notice in civil cases); *see also* I.R.E. 201(c)(1) (providing that, with respect to adjudicative facts, a court "may take judicial notice on its own").

We take this opportunity to craft such a rule now and hold a trial court has the discretion to take judicial notice of a foreign statute without a party's request for it to take judicial notice of it. The rule is well-established that courts freely review questions of law, including the interpretation of statutes. *See e.g.*, *State v. Schall*, 157 Idaho 488, 492, 337 P.3d 647, 651 (2014) ("This Court exercises free review over legal questions presented by the construction and application of a statute.") (quoting *State v. Montgomery*, 135 Idaho 348, 349–50, 17 P.3d 292, 293–94 (2001)).

Adopting this rule today still conforms to the *White* Court's reasoning behind adopting the requirement for a formal request for judicial notice in 1971. Today, a party's simple citation to a foreign statute would allow the party to "alert[] the trial court to the contention that the law of another state is applicable [and] give[] opposing counsel an opportunity to become familiar with that law." *White*, 94 Idaho at 30, 480 P.2d at 876. Technological advancements in the past fifty plus years have rendered the requirement that the proponent of a foreign statute submit a copy of the statute to the court a formality: The court and the opposing party can access a foreign statute online almost instantaneously.

However, we note that the decision to take judicial notice of a foreign statute without a party's request is a discretionary one. A prudent prosecutor should still formally request that the district court take judicial notice of a foreign statute, as well as furnish that germane statute to the district court and defense counsel. The district court is under no obligation to take judicial notice of a foreign statute if the prosecutor fails to make a request. The rule we adopt today simply states what a district court may do, not what it must do.

Applying this rule to the facts of the case at bar, we conclude that the district court did not err in making the determination that the Michigan crime was a felony in 1990. Instead, it appropriately took judicial notice of a foreign statute—a statute to which Wilson had clearly been alerted.

In sum, we hold that the State put forth sufficient evidence for a reasonable jury to conclude that Wilson was the person convicted of the Michigan crime in 1990. Additionally, while the identity of a defendant convicted of a crime in a sister state is a question of fact for the jury, the classification of that crime as a felony is a question of law to be decided by the court. Further, the court has the discretion to take judicial notice of the statutory law in that sister state in order to make that classification without a formal request by a party and without the submission of a copy of the foreign statute by a party. Here, the district court appropriately concluded that the Michigan crime was classified as a felony. Accordingly, we hold Wilson was appropriately subjected to the persistent violator sentencing enhancement.

### IV. CONCLUSION

For the reasons discussed above, we affirm the judgment of the district court.

Chief Justice BEVAN, Justices BRODY, MOELLER and ZAHN CONCUR.

15