IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 50846

| NATTALIA CASTELL, | ) | |
|---|---|---|
| | ) | |
| Claimant-Appellant, | ) | |
| | ) | **Boise, September 2024 Term** |
| v. | ) | |
| | ) | **Opinion Filed: November 25, 2024** |
| MONEY METALS EXCHANGE, LLC., | ) | |
| Employer; and IDAHO DEPARTMENT OF | ) | **Melanie Gagnepain, Clerk** |
| LABOR, | ) | |
| | ) | |
| Defendants-Respondents. | ) | |
| _____ | ) | |

Appeal from the Idaho Industrial Commission.

The decision of the Industrial Commission is <u>affirmed</u>.

Nattalia Castell, Meridian, Appellant Pro Se. Castell argued on her own behalf.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. M. Scott Keim argued.

_____

BRODY, Justice.

Nattalia Castell appeals the Idaho Industrial Commission (the "Commission") decision affirming an Idaho Department of Labor ("IDOL") finding that she was not entitled to unemployment benefits. Castell was discharged by her employer, Money Metals Exchange, L.L.C. ("Money Metals"), after she allegedly mishandled an IDOL notice sent to Money Metals concerning her boyfriend's application for unemployment benefits. After Castell herself applied for unemployment benefits, an IDOL appeals examiner excluded her boyfriend from testifying at the evidentiary hearing to determine Castell's eligibility, denied her request to reopen the evidentiary hearing so that she could read a statement she wrote in support of her application, and subsequently found that Castell was terminated for employment-related misconduct and was therefore ineligible for benefits. Castell filed an appeal with the Commission and again requested to reopen the evidentiary hearing. The Commission denied the request and affirmed the decision

1

of the IDOL appeals examiner. Castell then appealed to this Court. For the reasons set forth below, we affirm the decision of the Commission.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Castell was employed as a senior accountant for Money Metals from June 21, 2021, until she was discharged on November 11, 2022. During her employment, Castell was in a romantic relationship with another Money Metals employee, Thomas Hennig Jr. ("Hennig"). In August 2022, Hennig was terminated by Money Metals and subsequently applied for unemployment benefits with IDOL. IDOL sent a notice of Hennig's claim and an employer separation statement (hereafter "the Notice") to Money Metals, requesting Money Metals submit information within seven days concerning Hennig's employment and discharge.

For unknown reasons, the Notice ended up on Castell's desk. Castell took the Notice to her supervisor. Without informing the supervisor that the Notice concerned her boyfriend's claim, Castell "waived" the Notice in the air and inquired if she or the supervisor should fill it out and return it to IDOL. The supervisor recognized that it was a notice of an unemployment claim but was not aware that the Notice related to Hennig's claim. The supervisor told Castell "go ahead." Castell filled out several lines of the Notice and then left it unreturned on her desk. Consequently, Money Metals missed the deadline to return the Notice to IDOL. The supervisor testified that, on September 27, 2022, she became aware of Hennig's unemployment claim after an IDOL employee called Money Metals to ask why the Notice had not been returned. At this time, the supervisor was not aware why Hennig was terminated and scrambled to provide IDOL with the requested information.

Approximately five weeks later, Castell sent an email to the co-owner and president of Money Metals expressing concerns with overstaffing issues within her department and the lack of support she was receiving from the supervisor, among other things. Castell stated that the supervisor provided limited direction, feedback, and recognition. Castell also stated that she felt like she, rather than the supervisor, was managing the accounting department. An appeals examiner for IDOL subsequently held a hearing on Hennig's appeal from the denial of his application for unemployment benefits. Based on certain statements Hennig made during this hearing, the supervisor became suspicious that Castell was providing Hennig with information concerning Money Metals' finances and employees. The supervisor also wondered if the previous

document Castell had "waived" at her back in September was regarding Hennig's unemployment claim. Several days later, the supervisor went into Castell's office and discovered the partially completed Notice on Castell's desk. The supervisor photocopied the Notice and returned it to its prior location on Castell's desk.

That next Wednesday, the supervisor asked Castell if she had documents pertaining to Hennig's unemployment case, other than the "appeals packet," and Castell indicated that she did not. The supervisor decided to not "push" the issue of the incomplete Notice she discovered on Castell's desk at that time. The supervisor testified that she did not say anything because she wanted to provide Castell the opportunity to come forward on her own with information concerning the Notice. However, Castell never approached the supervisor to discuss the Notice.

Money Metals terminated Castell on November 11, 2022. During the termination meeting, the supervisor explained to Castell that she was being discharged for lying about the Notice. After Castell left, the supervisor could not locate the Notice on Castell's desk.

## B. Procedural Background

Castell subsequently applied for unemployment benefits with IDOL. The record does not contain an employer separation statement from Money Metals. However, notes made by an IDOL claims examiner show that the supervisor called IDOL to provide Castell's employment information and the reason for her discharge. During this phone call, the supervisor stated that Castell was fired for lying about seeing the Notice, but she could not provide evidence that Castell had lied to her. IDOL's notes from this phone call state in relevant part:

[IDOL:] What happened on the last day of work to cause the discharge (i.e. the final incident or last straw)?

[Supervisor:] Nothing.

[IDOL:] If nothing happened on that day to cause the discharge, what was the final incident (last straw) that caused the discharge?

[Supervisor:] I found a letter from the [IDOL] on [November 7, 2022,] in her office.

On [November 9, 2022,] I asked her about that letter we received concerning a previous employee who happened to be her boyfriend. She said she had seen nothing from the [IDOL] on that previous employee. I think she lied about seeing that letter.

[IDOL:] Can you provide any evidence to support she lied to you?

[Supervisor:] No.

3

. . .

[IDOL:] Please supply information regarding any previous incidents that are related to the claimant's discharge.

[Supervisor:] I don't have anything documented.

. . .

[IDOL:] Was a company policy or procedure violated?

[Supervisor:] No.

[IDOL:] What was the expected job behavior & what should the claimant have done?

[Supervisor:] Not lie to me.

(Emphasis omitted.) The IDOL claims examiner issued an eligibility determination, finding that Castell was eligible for benefits upon discharge because "[t]he evidence on record [was] not sufficient to establish that [she was] discharged for work-related misconduct."

Money Metals appealed, arguing that Castell was terminated "after her pattern of dishonesty, unprofessional/unethical behavior, failure to preform [sic] her duties, and improper removal of a company document." Money Metals argued that this conduct "violated fundamental employer expectations of behavior" and that "Castell acted for her personal benefit" at the expense of Money Metals' interest. In support of its appeal, Money Metals emailed IDOL the following documents: (1) an internal memorandum summarizing the events that led to Castell's termination, (2) Money Metals' company handbook and communications policy, (3) a confidentiality and non-compete agreement signed by Castell, and (4) a photocopy of the partially completed Notice.

An appeals examiner for IDOL held a telephone hearing on this matter on January 10, 2023. However, Castell did not receive notice of the hearing and was not present. During the hearing, the supervisor recounted, among other things, allowing Castell to complete the Notice after it was waived at her in September, discovering the incomplete Notice on Castell's desk, providing Castell with several days to come forward with information about the Notice, discharging Castell, and failing to locate the Notice following Castell's termination. The president of Money Metals testified that the company had reasonable expectations that its employees would not engage in self-dealing or undercut the company's interest, and that Castell sabotaged this interest by hiding the Notice.

The next day, the appeals examiner reversed IDOL's initial eligibility determination, finding that Castell was discharged for employment-related misconduct. Castell appealed, arguing

4

that she was not provided with due process because she did not receive notice of the hearing until approximately two weeks after the hearing. Finding that a postal delivery error likely caused Castell to miss the hearing, the Commission vacated the appeals examiner's order and remanded the matter for a new hearing.

A second telephone hearing took place before a different IDOL appeals examiner about a month later. During this hearing, Castell requested that Hennig remain with her in the hearing to provide moral support. The appeals examiner gave her the option of either calling Hennig as a witness, in which case he would be sequestered; or not calling him, in which case he could remain in the room. Castell opted to keep Hennig as a witness and he left the room.

Castell testified that she did not consider responding to the Notice to be a conflict of interest because she only provided factual information to IDOL and did not include any personal knowledge or information regarding Hennig's termination. However, Castell later admitted that failing to disclose the potential conflict to her supervisor was "an error in judgment." After the president of Money Metals and the supervisor testified, Castell suggested that neither were credible because their testimony was inconsistent "from one telling to the next" and because Money Metals had a history of turning a single instance into "a series of problems"—as shown in her case and Hennig's separate unemployment benefits case. Following a lengthy exchange between the appeals examiner and Castell, the appeals examiner excluded Hennig from testifying. The appeals examiner concluded that his testimony was unnecessary and irrelevant because Castell conceded Hennig did not have personal knowledge of the circumstances of her termination, and that she did not have documentation from Hennig's unemployment proceeding (or within this proceeding) that showed Money Metals' president and her supervisor made inconsistent statements.

After the hearing concluded, Castell sent an email to the appeals examiner requesting that the hearing be reopened so she could read a written statement into the record. The request to reopen the hearing included a copy of Castell's written statement she intended to read into the record and Castell's November 3, 2022, email. Castell stated that she was "intimidated" by the appeals examiner's statement that the first, January 10 hearing was not relevant and by Money Metals' president's "attempts to badger" Castell during the second hearing. Castell claimed that the supervisor's testimony from the January 10 hearing established that the supervisor "lied about having given me multiple chances to 'come clean' " and that the president "simply parroted [the supervisor's] statements."

5

> One of my main contentions herein is that Money Metals Exchange . . . is engaging in a pattern of changing its reasons for termination based upon which way it feels the wind is blowing. They did it in my boyfriend's case and they are doing it in mine. This bears heavily upon the issues of both [the president's] and [the supervisor's] credibility. Particularly where, as here, they have stated in sworn testimony that they have *no evidence* to support either their claim that I lied or that I removed or destroyed a document. [The supervisor] expressly stated that this is the case to the [IDOL]'s Investigator on November 29 and at the earlier hearing. She simply "thinks" that I lied to her and presumes I removed a document only because she couldn't find it. She also admitted, both today and in the prior hearing, that she lied about having given me multiple chances to "come clean." [The president] then simply parroted [the supervisor's] statements. The evidence demonstrates that their recent testimony is simply not to be believed.

Castell's letter further stated that she "should have been able to read [her] prepared statement into the record," citing to information on IDOL's website. Castell's letter claimed that the testimony given at the first, January 10 hearing was "admissible as a form of a [sic] prior inconsistent statement and may be admitted not only on the issue of credibility but as substantive evidence of what was said."

On February 22, 2023, the appeals examiner issued two decisions. First, the appeals examiner denied Castell's request to reopen the hearing after concluding Castell's claim that she was not permitted to read the statement into the record was "without merit" because the record showed that she "was provided with the opportunity to make a final statement for the record and that she, in fact, did so[.]" The appeals examiner further noted that Castell's statement was intended "to attack the credibility and veracity" of the supervisor and the president; however, Castell "provided no evidence other than making her unsubstantiated assertion."

> The claimant did not provide any documented evidence of prior statements made by [the president] and/or [the supervisor] to the [IDOL]'s claims investigator. The claimant provided no documented evidence of prior statements made by [the president] and/or [the supervisor] in Mr. Hennig's appeals hearing nor did she provide a transcript of that hearing as evidence of any prior inconsistencies in [the president's] and/or [the supervisor's] testimony.

> The claimant's assertion is not supported by the record and standing alone, without any substantive evidence to support her assertion, cannot support such a finding. The claimant's request to reopen the hearing is, therefore, denied.

The second decision issued by the appeals examiner held that Castell was ineligible to receive unemployment benefits because she had been discharged for employment-related misconduct under the standards of behavior test. The appeals examiner determined that Castell's failure to disclose that the Notice concerned Hennig's unemployment claim was an "intentionally

6

deceitful act"; completing the Notice was "certainly" a conflict of interest; and her denial of having additional documents pertaining to Hennig's claim was false.

Thereafter, Castell appealed the February 22 decision to the Commission. Then, on March 23, 2023, Castell submitted a brief to the Commission without requesting permission as required by Rule 5(A) of the Rules of Appellate Practice and Procedure governing unemployment claims (RAPP). In her brief, Castell argued that she was "entitled to a new hearing" based on the appeals examiner's exclusion of Hennig's testimony and denial of her motion to reopen the hearing. Castell further argued that Money Metals failed to meet its burden of proof to establish that she was terminated for employment-related misconduct.

After conducting a de novo review of the agency record, the Commission denied Castell's request for a new hearing and affirmed the denial of Castell's application for unemployment benefits. The Commission denied the request for a new hearing on a number of grounds, including (1) Castell's failure to seek permission to file the brief as required by Rule 5(a) of the Rules of Appellate Practice and Procedure; (2) Castell's failure to serve the brief on the other parties; and (3) because "[t]here [was] no indication the [a]ppeals [e]xaminer abused his discretion in denying testimony from" Hennig.

Turning to the issue of Castell's misconduct, the Commission first explained that Money Metals failed to establish that Castell deliberately violated its rules or policies because "none of the policy documents [Money Metals] provided" related to the behavior that resulted in Castell's termination. The Commission then proceeded to analyze whether Castell was discharged under the standards of behavior test for misconduct. The Commission noted Castell's testimony that she "forgot about" the Notice "was doubtful" given her relationship with Hennig and that her mishandling of the Notice fell below Money Metals' expectations.

The Commission further dismissed Castell's retaliation argument, noting that (1) there was no evidence to support her claim and (2) her belief that Money Metals' action was not justified did not factor into the analysis based on this Court's ruling in *Alder v. Mountain States Telephone and Telegraph Co.*, 92 Idaho 506, 512, 446 P.2d 628, 634 (1968). Thus, the Commission concluded that Castell had been discharged for workplace misconduct and was therefore ineligible for unemployment benefits.

Castell then appealed the Commission's decision to this Court.

## II.  STANDARDS OF REVIEW

"In appeals from the Commission, this Court's review is limited to questions of law, 'which include whether the Commission's factual findings are supported by substantial and competent evidence and the application of the facts to the law.' " *Shumway v. Evans Chiropractic, PA*, 173 Idaho 226, ___, 541 P.3d 58, 62 (2023) (quoting *Hiatt v. Health Care Idaho Credit Union*, 166 Idaho 286, 290, 458 P.3d 155, 159 (2020)). "Because the Commission is the fact finder, its conclusions on the credibility and weight of the evidence will not be disturbed on appeal unless they are clearly erroneous. This Court does not weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented." *Hiatt*, 166 Idaho at 290, 458 P.3d at 159 (quoting *Ehrlich v. DelRay Maughan, M.D., P.L.L.C.*, 165 Idaho 80, 83, 438 P.3d 777, 780 (2019)).

## III.  ANALYSIS

### A. Castell's request for judicial notice failed to comply with Idaho Rule of Evidence 201.

We first address Castell's request that this Court take judicial notice of the case *Hennig v. Money Metals Exchange, L.L.C.*, ___ Idaho ___, ___, 551 P.3d 1237, 1244 (2024). More specifically, Castell requests that this Court take judicial notice of the record on appeal, including the recording of Hennig's hearing and briefs, and the following facts: (1) the supervisor appeared as a witness on behalf of Money Metals during Hennig's unemployment hearing, (2) Money Metals "changed its reasons for discharging" Hennig "and twisted the facts in that case" to claim Hennig was terminated for misconduct; (3) Hennig's hearing before the appeals examiner in his case took place on November 3, 2022, and his claim was denied on November 10, 2022, one day prior to [Castell]'s termination[,]" and (4) Money Metals chose "not to participate in either this [a]ppeal or Mr. Hennig's [a]ppeal, and has been barred by this Court from further participation in either case." (Emphasis omitted.) Castell argues in her reply brief that this evidence, as well as the other facts of her case, show "a pattern and practice of deceitful behavior on the part of [Money Metals], including falsified documentation and perjured testimony." (Emphasis omitted.) In response, IDOL argues Castell's request should be denied because it failed to comply with Idaho Rule of Evidence 201 and Idaho Appellate Rule 30(a).

Judicial notice of adjudicative facts may be taken "at any stage of the proceeding." I.R.E. 201(d). Thus, "[t]his Court may take judicial notice of an adjudicative fact for the first time on appeal." *Hennig*, ___ Idaho at ___, 551 P.3d at 1244 (citation omitted). However, we decline to

8

take judicial notice of the matters Castell identified because her request failed to comply with Idaho Rule of Evidence 201.

"Idaho Rule of Evidence 201 provides the types of facts which a court may judicially notice, as well as the procedure for requesting the court to take judicial notice." *Idaho Dep't of Health & Welfare v. Doe (2023-24)*, 172 Idaho 891, 898, 537 P.3d 1252, 1259 (2023). "Rule 201 pertains only to 'adjudicative facts' " *Id.* (quoting I.R.E. 201(a)). "An 'adjudicative fact' is a 'controlling or operative fact, rather than a background fact; a fact that concerns the parties to a judicial or administrative proceeding and that helps the court or agency determine how the law applies to those parties.' " *Id.* (quoting *Bass v. Esslinger*, 171 Idaho 699, 704–05, 525 P.3d 737, 742–43 (2023)). Under Rule 201(b), the only kinds of adjudicative facts that may be judicially noticed are ones "not subject to reasonable dispute" because the facts are either: (1) "generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." I.R.E. 201(b)(1)–(2).

"When a party requests judicial notice of records, exhibits, or transcripts from the court file in the same or a separate case," as in this case, "the party must identify the specific items for which judicial notice is requested or offer to the court and serve on all parties copies of those items." I.R.E. 201(c). "[A] party must be specific in their requests for notice because 'judicial notice is intended to preserve judicial efficiency by recognizing facts that are easily and objectively verifiable.' " *Bass*, 171 Idaho at 705, 525 P.3d at 743 (first quoting *State v. Lemmons*, 158 Idaho 971, 979, 354 P.3d 1186, 1194 (2015) (Jones, J. concurring); and then quoting *Rome v. State*, 164 Idaho 407, 416, 431 P.3d 242, 251 (2018)). In considering Rule 201(c)'s specificity requirement, we have "explained that providing the 'necessary information' means supplying the court with a specific reference to the adjudicative fact or facts contained in the designated record, exhibit, or transcript that is relevant to the cause of action or specific claim before the court." *Id.* (cleaned up) (quoting *Rome*, 164 Idaho at 414, 431 P.3d at 249).

Here, Castell has not argued that any of the requested facts to be noticed are adjudicative facts or that these facts are beyond reasonable dispute. Nor has she provided the Court with references to specific portions of the appellate record in *Hennig*—such as hearing transcript excerpts or sections of the party briefing on appeal—which purportedly contain the relevant facts that she seeks to be judicially noticed. Instead, Castell generally references entire hearing transcripts and appellate briefing. While certain facts can be ascertained from the appellate record

in *Hennig* —such as the dates of the evidentiary hearing, the supervisor's appearance as a witness for Money Metals, Money Metals' lack of participation in the appeal before this Court, and the date Hennig's unemployment application was denied—these facts are largely background facts rather than controlling or operative facts. And Castell's claim that Money Metals "changed its reasons for discharging" Hennig or "twisted the facts in that case" is certainly subject to reasonable dispute.

Moreover, "[m]atters to be judicially noticed by the Supreme Court must be augmented in the settled record by motion under [Idaho Appellate Rule] 30(a) with a motion and all relevant documents attached." *Ellis v. Ellis*, 167 Idaho 1, 5 n.2, 467 P.3d 365, 369 n.2 (2020). "If the party requesting that notice fails to comply with these requirements, the documents for which judicial notice is sought will not be considered by this Court." *Id*. Here, Castell did not attempt to augment the settled record with any of the matters she seeks to be judicially noticed under Idaho Appellate Rule 30(a). Therefore, Castell's request for judicial notice is denied.

### B. Castell is not entitled to a new evidentiary hearing.

Castell contends she was entitled to a rehearing based on two mistakes made by the appeals examiner during the evidentiary hearing. First, Castell argues the appeals examiner erred in excluding Hennig's testimony because (1) IDOL's instructions on its website states that "[e]ach party may testify and call other witnesses[,]" and (2) under Idaho Rule of Evidence 607, "[a]ny party, including the party that called the witness, may attack the witness's credibility." Second, Castell argues that the appeals examiner erred by preventing her from reading a prepared written statement into the record. For the reasons set forth below, Castell's arguments are unavailing.

"Idaho Code section 72-1368 sets out the process for filing a claim for unemployment benefits, and grants IDOL the authority to promulgate rules governing that process." *Allen v. Partners in Healthcare, Inc.*, 170 Idaho 470, 479, 512 P.3d 1093, 1102 (2022) (citing I.C. § 72-1368(1)). "Section 72-1368(6) sets forth the framework for appealing eligibility determinations. Pursuant to that subsection, the director of IDOL must appoint appeals examiners, who have the authority to 'affirm, modify, set aside or reverse' an eligibility determination 'after affording the interested parties' reasonable opportunity for a fair hearing.' " *Id*. (quoting I.C. § 72-1368(6)). "Proceedings before an appeals examiner are not governed by the Idaho Rules of Evidence, nor are they subject to the provisions of the Idaho Administrative Procedure Act." *Id*. (first citing I.C. § 72-1361; and then citing IDAPA 09.01.01.015).

10

Three IDOL rules governing the unemployment appeals process are relevant to this case. "IDAPA 09.01.01.045.11 states that an appeals examiner operates both as a fact finder and a judge and has 'the responsibility of developing all the evidence that is reasonably available.' " *Id*. "IDAPA 09.01.01.045.12 provides that an appeals examiner may exercise reasonable discretion to 'direct the order of witness [sic] and develop evidence in a logical and orderly manner.' " *Id*. "Finally, under IDAPA [09.01.01.045.13] an appeals examiner 'may exclude evidence that is irrelevant, unduly repetitious, or excludable on constitutional or statutory grounds.' " *Id*. (citation omitted).

After reviewing the record, there is no basis to conclude that the appeals examiner's exclusion of Hennig's testimony violated any of the above rules. The critical inquiry before the appeals examiner was whether Castell was discharged for employment-related misconduct. *See* IDAPA 09.01.30.275. Castell represented that Hennig's testimony would pertain to his own termination by Money Metals, and that his testimony was proffered to support her argument that Money Metals had a pattern of "rewriting the narrative after the fact" to justify its termination of its employees. However, Castell conceded Hennig did not have personal knowledge of the circumstances of her termination, and she did not have documentation from Hennig's unemployment proceeding (or from this proceeding) that showed Money Metals' witnesses unquestionably made inconsistent statements. The Idaho Rules of Evidence did not apply to the hearing, and the IDAPA rules expressly authorized the hearing examiner to exclude irrelevant evidence. Therefore, the appeals examiner did not err by excluding Hennig's testimony.

Next, there is no basis to conclude that the appeals examiner prevented Castell from reading a prepared written statement into the record. In the decision denying Castell's request to reopen the evidentiary hearing, the appeals examiner determined Castell's claim—that she was not permitted to read the statement into the record—was meritless because the record showed that she "was provided with the opportunity to make a final statement for the record and that she, in fact, did so[.]" This determination is supported by the hearing transcript. Therefore, the appeals examiner did not err by denying Castell's request to reopen the evidentiary hearing.

For these reasons, we conclude Castell is not entitled to a rehearing.

## C. Castell's challenges to the Commission's findings and conclusions are without merit.

Castell contends the Commission erred when it concluded that Money Metals discharged her for employment-related misconduct. Specifically, she argues that Money Metals failed to

establish that she was discharged for employment-related misconduct because (1) Money Metals admitted that it had no proof to support the supervisor's belief that Castell had lied to her about the Notice; (2) the supervisor and president lacked credibility, and (3) the "obvious" reason behind her termination was retaliation for her November 3, 2022, email to the president. In response, IDOL argues that "Castell is urging this Court to reweigh the evidence and substitute its judgment for the Commission's as to issues of credibility and weight of the evidence." IDOL further contends that this Court should not evaluate the testimony from the January 11 hearing because Castell failed to proffer specific testimony from that hearing to the appeals examiner that contradicted the supervisor's testimony during the February 21 hearing. We agree with IDOL.

"Under the Idaho Employment Security Law, '[c]laimants who have become unemployed through no fault of their own may be entitled to unemployment insurance benefits.' " *Hennig v. Money Metals Exchange, L.L.C.*, ___ Idaho ___, ___, 551 P.3d 1237, 1245 (2024) (quoting *Hiatt v. Health Care Idaho Credit Union*, 166 Idaho 286, 290, 458 P.3d 155, 159 (2020)). "If the employee was discharged, which occurred in this case, 'the issue is whether the claimant committed some form of employment-related misconduct that would affect his or her ability to receive unemployment benefits under Idaho Code section 72-1366(5).' " *Id.* (quoting *Hiatt*, 166 Idaho at 290–91, 458 P.3d at 159–60). "The focus of the inquiry is not whether the employer's reason for discharge was reasonable but, rather, whether the misconduct was work-related so as to make the employee ineligible for unemployment benefits." *Id.* (quoting *Shumway v. Evans Chiropractic, PA*, 173 Idaho 226, 231, 541 P.3d 58, 63 (2023)). "Misconduct is defined in three ways: (1) a willful, intentional disregard of the employer's interest; (2) a deliberate violation of the employer's reasonable rules; or (3) a disregard of a standard of behavior which the employer has a right to expect of its employees." *Id.* (citing IDAPA 09.01.30.275.02.a–c).

"The question of whether an employee's behavior constitutes misconduct in connection with employment pursuant to I.C. § 72-1366(e) is a question of fact, and we will uphold the Commission's determination of this issue if supported by substantial and competent evidence." *Folks v. Moscow Sch. Dist. No. 281*, 129 Idaho 833, 836, 933 P.2d 642, 645 (1997) (citations omitted). "Unless clearly erroneous, this Court will not disturb the Commission's conclusions on the credibility and weight of evidence." *Stolle v. Bennett*, 144 Idaho 44, 49, 156 P.3d 545, 550 (2007) (quoting *Painter v. Potlatch Corp.*, 138 Idaho 309, 312, 63 P.3d 435, 438 (2003)). "This Court will not 're-weigh the evidence or consider whether it would have reached a different

12

conclusion from the evidence presented.' " *Id.* (quoting *Painter*, 138 Idaho at 312, 63 P.3d at 438). Thus, the relevant question on appeal is whether the Commission's determination is supported by substantial and competent evidence, and whether the Commission properly applied the law to the evidence.

Here, Castell's arguments essentially urge us to reweigh the evidence and second guess the Commission's credibility determinations. The Commission found that Castell's mishandling of the IDOL's request for information disregarded a standard of behavior that Money Metals had a right to expect of its employees. The Commission further determined that Castell's claim that she forgot about the Notice was "doubtful" given her relationship with Hennig. Furthermore, the Commission seemingly gave weight to the testimony of the supervisor and president when it rejected Castell's claim that she was terminated in retaliation for her November 3, 2022, email to the president. We will not second-guess the Commission's credibility determinations based on a cold record. Based on the testimony given at the evidentiary hearing, we conclude that the Commission's determination is supported by substantial and competent evidence.

Furthermore, even if we were to weigh the credibility of the witnesses, we are not persuaded by Castell's argument that Money Metals' witnesses made inconsistent statements during the evidentiary hearings based on the supervisor's statement that she had no evidence to support the supervisor's belief that Castell had lied. The IDOL claims examiner's notes from the initial telephone call with the supervisor state in relevant part:

[supervisor:] I found a letter from the [IDOL] on [November 7, 2022,] in her office.

On [November 9, 2022,] I asked her about that letter we received concerning a previous employee who happened to be her boyfriend. She said she had seen nothing from the [IDOL] on that previous employee. I think she lied about seeing that letter.

[IDOL:] Can you provide any evidence to support she lied to you?

[supervisor:] No.

While the supervisor may not have characterized her account of the events leading to Castell's termination as "evidence," her rendition of these events leading to Castell's termination *was* evidence, and her account of the facts remained consistent during her testimony before the two appeals examiners. For these reasons, we conclude that Castell's challenges to the Commission's findings and conclusions are without merit.

## IV. CONCLUSION

For the reasons set forth above, we affirm the Commission's denial of Castell's application for unemployment benefits.

Chief Justice BEVAN, and Justices MOELLER, ZAHN and MEYER CONCUR.